16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Erice RAINER, Sr. and Jessica Rainer, Plaintiffs-Appellants,
v.
Lynda M. LIS, Defendant-Appellee.
 No. 92-2436.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1994.
 
 Before: BOGGS and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Erice Rainer filed this 42 U.S.C. Sec. 1983 suit against Officer Lynda Lis after Lis arrested him as a suspect in a hold-up. Rainer was detained for several hours, but was released after the victim failed to identify him in a line-up. The district court entered summary judgment for Lis. Because we find that Lis had probable cause to arrest Rainer, we affirm the district court's judgment.
 
 
 2
 * Rainer was a maintenance man at the Gesu School in Detroit. The school is located across the street from the University of Detroit campus. Lis was employed as a safety officer at the University of Detroit. The Detroit police department and the university were parties to a letter of understanding that granted the University of Detroit's officers the same "powers and privileges" as city officers.
 
 
 3
 Around 7:00 a.m. on October 1, 1988, a University of Detroit student, Mark Van Loon, was walking along the street closest to the Gesu School. When he reached the school, a man jumped out of the bushes holding a stick wrapped in a cloth. The man ordered Van Loon to hand over his wallet, and Van Loon did so. The man then fled the scene.
 
 
 4
 Van Loon went to a friend's house nearby. While standing in front of this house--and ten to fifteen minutes after the assault--Van Loon saw, at a distance of 100 yards, a man whom he believed to be his assailant in the Gesu School parking lot. Van Loon then called the university safety dispatcher. He described what had happened and said that he had just seen a man who looked like his assailant in the Gesu School parking lot and that he believed that the man entered the Gesu School. Van Loon described his assailant as "a black man with short hair wearing a burgundy and gold shirt." Van Loon also knew that his assailant was clean-shaven. While it is unclear if he told the dispatcher that fact, it is undisputed that Lis did not know to look for a clean-shaven man.
 
 
 5
 Lis and her partner were dispatched to investigate the incident. When they arrived at the Gesu School, they found Rainer, an African-American man with short hair and a goatee; Rainer was also wearing a burgundy sweatshirt. The university officers told Rainer that a robbery had occurred and that the victim reported that the assailant had entered the Gesu School. The officers informed Rainer that he matched the description and that they were taking him to police headquarters for questioning. Rainer, who knew the officers, thought they were joking; he put up his hands and said, "Take me. Here I am." The officers then handcuffed Rainer and took him to the Detroit police headquarters.
 
 
 6
 During the arrest, Van Loon stayed on the telephone with the university dispatcher. Van Loon asked to get a closer look at the suspect, but the dispatcher said that he could not because of "due process reasons." Van Loon then went to the police headquarters and asked when he could see a line-up. The police officers said that they could not arrange a line-up until later that day. Van Loon, however, was scheduled to take the Law School Admission Test within the hour. The police told him to take the test and they would call him when they had a line-up ready. Before he left to take his test, Lis asked Van Loon about the incident, but she did not describe the man whom she had arrested.
 
 
 7
 The line-up finally occurred between 8:00 and 10:00 p.m. that same evening. Van Loon did not identify Rainer as his assailant. Van Loon later testified that he knew that none of the individuals could have been his attacker because they all had facial hair, and his assailant had been clean shaven. Rainer was released at 10:30 p.m. that same evening.
 
 II
 
 8
 Rainer contends that summary judgment was inappropriate in his case because the facts before the district court indicated that there was a genuine issue of material fact as to whether Lis had probable cause to arrest him. Rainer also argues that Van Loon was an unreliable informant and Lis had a duty to investigate Van Loon's story before making an arrest.
 
 
 9
 This court reviews de novo the district court's grant of defendants' motion for summary judgment. Baggs v. Eagle-Picher Indus., Inc., 957 F.2d 268, 271 (6th Cir.), cert. denied, 113 S.Ct. 466 (1992). This court will affirm the district court only if it determines that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The district court must view all evidence before it in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).
 
 
 10
 The moving party need not support its motion with evidence disproving the non-moving party's claim, but must only show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case. 477 U.S. at 322, 106 S.Ct. at 2552. The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).
 
 
 11
 Rainer's first argument is that Lis was not entitled to rely on Van Loon as an informant because "a solitary accusation, without corroborating facts" is insufficient to constitute probable cause. Probable cause to arrest exists if at the moment of arrest the facts and circumstances known to the arresting officers are "sufficient to warrant a prudent [person] in believing that the [person arrested] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964). The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13 (1983).
 
 
 12
 An officer is entitled to rely on an eyewitness identification to establish probable cause. Gerald M. v. Conneely, 858 F.2d 378, 381 (7th Cir.1988). Probable cause exists unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness "was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." Ibid. Finally, the existence of probable cause should be determined on the totality of the circumstances; this analysis includes a realistic assessment of the situation from a law enforcement officer's perspective. United States v. Barrett, 890 F.2d 855, 861 (6th Cir.1989).
 
 
 13
 In this case, the totality of the circumstances was sufficient to create probable cause for arresting Rainer. At the time of Rainer's arrest, Lis knew that a robbery had occurred between 7:00 and 7:20 a.m. in front of the Gesu School; that the victim, Van Loon, had reported that he believed he saw his attacker enter the Gesu School; and that Van Loon described his attacker as a black man with short hair and wearing a burgundy and gold shirt. Lis found Rainer in the Gesu School shortly thereafter, wearing a burgundy shirt and fitting the general description. We believe that these facts were sufficient to establish probable cause to believe that Rainer committed the robbery. Moreover, there is no indication that Lis had any reason to question Van Loon's veracity or account of what he had seen.
 
 
 14
 Rainer also argues that Van Loon was not a 'reliable informant' and Lis was not entitled to rely on Van Loon's account without corroborating evidence. To support his argument, Rainer relies on caselaw that questions the reliability of anonymous tips. While we do not dispute that anonymous tips require some corroboration, see, e.g., Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412 (1990), we draw a distinction between a true anonymous tip, as in White, and a victim's report, which, although related by a person unknown to the police officers, contains indicia of reliability. On this record, we find that there were sufficient indicia of reliability in Van Loon's description for Lis to believe that there was probable cause to arrest Rainer.
 
 
 15
 Rainer argues, however, that Lis had a duty to investigate the report because Van Loon was too far from Rainer to make a reasonable identification and that Van Loon's description of his attacker was too general to justify a warrantless arrest. However, an officer need not "forego arrest pending further investigation if the facts as initially discovered provide probable cause." Criss v. City of Kent, 867 F.2d 259 (6th Cir.1988). In this case, since the totality of the circumstances provided probable cause for Rainer's arrest, Lis had no duty to investigate further before arresting Rainer.
 
 
 16
 Rainer contends that BeVier v. Hucal, 806 F.2d 123 (7th Cir.1986), Sevigny v. Dicksey, 846 F.2d 953 (4th Cir.1988), and several Michigan cases suggest otherwise. Both BeVier and Sevigny are distinguishable because they deal with situations where the officers should have conducted pre-arrest investigations because they did not have enough information to establish probable cause. BeVier, 806 F.2d at 127; Sevigny 846 F.2d at 958-59. Here, Lis had probable cause to believe that Rainer committed the robbery. Furthermore, the Michigan cases are simply inapposite. Rainer's suit is based on an alleged violation of the United States Constitution, not on any right guaranteed by Michigan law. Consequently, these cases are not persuasive.
 
 
 17
 For the foregoing reasons, we AFFIRM the district court's entry of summary judgment in favor of Lis.