38 F.3d 1217
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marvin D. AMERSON, Defendant-Appellant.
 No. 93-6360.
 United States Court of Appeals, Sixth Circuit.
 Oct. 21, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges; and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant Marvin D. Amerson appeals the district court's denial of his Motion To Suppress Due To An Unlawful Arrest and Motion To Suppress Due To Unlawful Search And Seizure. We AFFIRM the district court's denial of both motions. The police had probable cause to make a warrantless arrest of Amerson. In addition, the affidavit supporting the search warrant was sufficient to provide probable cause for the issuance of that warrant.
 
 I.
 
 2
 On June 10, 1991, Memphis police effected a warrantless arrest of Defendant-Appellant Amerson in a public park in Memphis, Tennessee. Probable cause to effect the arrest was created when Sandra Martin, the head teller at United American Bank, positively identified Amerson as the man who jumped over the counter and robbed United American just over a year
 
 
 3
 On the day of Amerson's arrest, the police also conducted a search of his home pursuant to a warrant. The warrant was based upon the affidavit of Sergeant Jerry King, wherein King related Sandra Martin's identification of Amerson as the man who had robbed United American on April 4. King's affidavit also attested to the fact that the FBI and Memphis police were investigating a number of other robberies committed in the Memphis area, bearing the same modus operandi. In each robbery, one of the perpetrators jumped over the bank counter and cleaned out the tellers' drawers. The group also used stolen cars on each occasion and carried firearms. Moreover, King's affidavit recounted that the Memphis Police Department had received five different tips identifying Amerson as one of the thieves, in addition to two tentative identifications of Amerson by individuals whose cars had been taken following two of the robberies. Finally, the affidavit related the facts of a June 10, 1991 robbery, the date of the search, wherein one of the perpetrators gained entry into the Southern Security Federal Credit Union by stating that his wife worked for Federal Express and had an account with the Credit Union.[1] The affidavit went on to note that less than an hour after this robbery, surveillance of Amerson's residence revealed him entering the home with a gym bag.
 
 
 4
 Marvin Amerson was indicted on June 13, 1991, in a fourteen-count federal indictment. Seven of the counts charged Amerson with armed bank robbery. The other seven counts charged the use of a firearm during a crime of violence. On June 21, 1991, the government obtained a seventeen-count superseding indictment against Amerson and his two co-conspirators, Ricky Owens and Donial Davis. Amerson was named in fourteen of these counts, seven of which once again charged him with armed bank robbery and the other seven of which charged him with the use of a firearm during a crime of violence.
 
 
 5
 On October 8, 1991, Amerson filed a motion to suppress confessions he made while in police custody following his arrest for the crimes charged. This motion was amended by Amerson on November 12, 1991. The amended motion asserted that the evidence seized during the June 10, 1991 search of Amerson's home should also be suppressed because the affidavit supporting the search warrant lacked probable cause. The district court denied Amerson's motion on November 25, 1991, and denied the amended motion on January 6, 1992.
 
 
 6
 Amerson filed a second motion to suppress on December 12, 1991. This motion asserted that the arresting officers lacked probable cause to arrest Amerson without a warrant. This motion was amended on February 18, 1992, and the district court issued an order of denial on May 28, 1992.
 
 
 7
 On April 2, 1993, pursuant to a plea agreement, Amerson pled guilty to two of the seventeen counts contained in the superseding indictment. He was sentenced to twenty-five years in prison. Amerson reserved the right to appeal the denial of his Motion to Suppress Due to Unlawful Arrest, and the denial of his Motion to Suppress the Results of an Invalid Search.
 
 II.
 
 8
 "A warrantless arrest will be justified if, at the time of the defendant's arrest, police officers have probable cause to believe that an offense has been, is being, or will be committed." United States v. Sangineto-Miranda, 859 F.2d 1501, 1508 (6th Cir.1988) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Probable cause will exist if a reasonably prudent person, viewing the facts and circumstances as known to the officer, would believe that a crime is being, has been, or is about to be committed. Id. Federal law determines whether evidence must be suppressed due to an arrest allegedly made without probable cause. United States v. Wright, 16 F.3d 1429, 1436-37 (6th Cir.), cert. denied, 114 S.Ct. 2759 (1994).
 
 
 9
 When reviewing a claim that probable cause did not exist to justify a warrantless arrest, this court must examine the totality of the circumstances to make its determination. Illinois v. Gates, 462 U.S. 213, 238 (1983). Furthermore, we review a district court's legal conclusions regarding the existence of probable cause de novo. United States v. Leake, 998 F.2d 1359, 1362 (6th Cir.1993). Yet, the magistrate's conclusion that probable cause exists is to be treated with extreme deference by this court upon review. Id. at 1363. Consequently, "a warrant must be upheld as long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing." Id. (quotations and citations omitted).
 
 III.
 A.
 
 10
 Amerson first asserts on appeal that the district court erred by denying his Motion To Suppress Due To Unlawful Arrest. In the instant case, the government has asserted that Amerson's warrantless arrest was based upon Sandra Martin's positive identification of Amerson on April 23, 1991.[2] See Government Br. at 10 ("King testified that he based Amerson's arrest on the positive identification of the Defendant by Sandra Martin."). Amerson challenges this reliance, arguing that "[t]he positive identification by Sandra Martin of a disguised perpetrator more than a year after the robbery has absolutely no indicia of reliability and could not form the basis of probable cause for a warrantless arrest." Amerson Br. at 18. We find Amerson's position to be without merit.
 
 
 11
 In Chambers v. Maroney, 399 U.S. 42, 46 (1970), the Supreme Court found that a description of the defendant provided to the police by the victim and several observers provided "ample cause to stop a light blue compact station wagon carrying four men and to arrest the occupants." Similarly, the Seventh and Ninth Circuits have found that an eyewitness' credible identification of the defendant is sufficient in and of itself to establish probable cause. See United States v. Mahler, 442 F.2d 1172, 1174-75 (9th Cir.) (finding that "when the informant is the victim of the crime [it] need [not] be shown by other facts, that she is a reliable informant"), cert. denied, 404 U.S. 993 (1971); Gerald M. v. Conneely, 858 F.2d 378, 381 (7th Cir.1988) (finding that "[w]hen an officer has 'received his information from some person--normally the putative victim or an eye witness--who it seems reasonable to believe is telling the truth,' he has probable cause.") (quoting Daniels v. United States, 393 F.2d 359, 361 (D.C.Cir.1968) and Gramenos v. Jewel Cos., 797 F.2d 432, 439 (7th Cir.1986), cert. denied, 481 U.S. 1028 (1987)).
 
 
 12
 The approach of the Seventh and Ninth Circuits to probable cause determinations has been adopted in the Sixth Circuit. Thus, in Rainer v. Lis, No. 92-2436 (6th Cir. February 7, 1994), we found that "[a]n officer is entitled to rely on an eyewitness identification to establish probable cause. Probable cause exists unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness 'was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.' " Rainer, slip opinion at 4 (citation omitted, quoting Gerald M., 858 F.2d at 381).
 
 
 13
 Similarly, in Cole v. Lampe, No. 81-5588 (6th Cir. March 24, 1982), we found that an eyewitness' identification of the defendant was sufficient to establish probable cause. "It appears that identification of plaintiff by a victim of the crime was sufficient to establish probable cause for the arrest." Id., slip opinion at 2.
 
 
 14
 Applying this reasoning to the instant case, we find that Sandra Martin's positive identification of the defendant was sufficient to establish probable cause for Amerson's warrantless arrest. Sandra Martin, who stood mere feet from Amerson during the United American Bank robbery, was an eyewitness to that theft. Moreover, there is nothing in the record which would indicate the police should have suspected Martin of falsification, inaccuracy or mistake with respect to her identification of Amerson.
 
 
 15
 Amerson attacks Martin's identification, asserting first that he was disguised during the robbery, thus making the identification unreliable. See Amerson Br. at 18. However, the "disguise" worn by Amerson consisted of a pair of sunglasses and a skull cap worn on his head. See J.A. at 156-57. Therefore, the "disguise" at no time fully obstructed Martin's view of Amerson's face.
 
 
 16
 In addition, Amerson maintains that the identification is unreliable because it was made more than a year after the crime was committed. See Amerson Br. at 18. Amerson has cited to no authority for his position that the mere passage of time between the commission of an offense and a witness' identification of the suspect will serve to invalidate the validity of the identification. Thus, while we recognize that extended periods of time between the perpetration of the crime and the eyewitness' identification of the defendant may tend to undermine the reliability of an identification, we find that in the instant case, the passage of time alone is insufficient to negate the district court's probable cause determination.
 
 
 17
 There has been no allegation that the photo identification was conducted in an improper or suggestive manner, nor that Martin was unsure or tentative about the identification. See J.A. at 145 (stating that Martin asserted she was 99.9% sure of her identification). Consequently, we affirm the district court's denial of Amerson's Motion to Suppress Due to Unlawful Arrest.
 
 B.
 
 18
 Amerson next argues that the district court erred by denying his motion to suppress the evidence found during the June 10 search of his home. Amerson maintains that the search warrant which authorized the search lacked the necessary probable cause, and was so invalid on its face as to render official reliance upon the warrant insupportable. See Amerson Br. at 20-21.
 
 
 19
 A warrant will be upheld as valid when the totality of the circumstances establish that there is probable cause to believe relevant evidence will be found in a particular place. United States v. Pelham, 801 F.2d 875, 877 (6th Cir.1986), cert. denied, 479 U.S. 1092 (1987). Moreover, if the magistrate in the instant case had a meaningful basis for concluding that the search would uncover relevant evidence of wrongdoing, the Fourth Amendment is satisfied, and the warrant must be upheld. Id. at 877-78; Leake, 998 F.2d at 1363.
 
 
 20
 The warrant to search Amerson's residence was issued based upon the affidavit of Sergeant King. Amerson attacks the validity of the evidence presented in this affidavit, arguing that each component is insufficient, in and of itself, to establish probable cause, and thus concludes that "a totality of unreliable circumstances produces a search warrant totally lacking in probable cause." Amerson Br. at 25. However, Amerson's attack on the evidence attempts to carve the affidavit into discrete segments in a manner that Gates, 462 U.S. at 230-238, has instructed is improper. The role of the "reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). We are not to dissect the evidence into its individual components for analysis, but rather must look to the totality of the circumstances to determine if probable cause exists. Gates, 462 U.S. at 238.
 
 
 21
 Under the facts presented, we concluded that the magistrate had a substantial basis for finding the affidavit created probable cause to believe that Amerson's home might contain fruits or instrumentalities of a crime. Accordingly, we affirm the validity of the search warrant.[3]
 
 IV.
 
 22
 For the foregoing reasons, we affirm the district court's denial of Amerson's motions to suppress.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Additional investigation revealed that Amerson's wife was a Federal Express employee. Amerson Br. at 24
 
 
 [2]
 The government has also asserted a number of other bases that it maintains will establish probable cause for the warrantless arrest of Amerson on June 10, 1991. These alternate bases include: 1) that Amerson had been identified as one of the assailants in a similar robbery of a First American National Bank in Jackson Tennessee; 2) that Sergeant King was aware of the fact that Amerson had been tentatively identified by two other victims prior to Martin's identification; and 3) that five separate anonymous tips had been received through "Crime Stoppers" identifying Amerson as the party responsible for the rash of bank robberies. See Government's Br. at 11. These additional bases for King's warrantless arrest of Amerson are irrelevant where King admitted that his sole basis for arresting Amerson was Sandra Martin's identification of the defendant. Id. ("Sgt. King relied solely on the positive identification of Sandra Martin"). Thus, the propriety of the arrest turns solely on the question of whether this identification was sufficient to create probable cause
 
 
 [3]
 In light of the conclusion that the warrant was in fact valid on its face, it is unnecessary to reach Amerson's argument that the warrant was so defective that police reliance upon the warrant was invalid