RONALD LEE GILMAN, Circuit Judge,
concurring in part and dissenting in part.
The majority has concluded that the district court properly denied Sergeant Moore’s motion for summary judgment with respect to Provience’s Brady claim, but that the district court erred in denying Sergeant Moore qualified immunity with respect to the false-arrest and malicious-prosecution claims. I fully agree with the majority that the Brady claim should go forward. Contrary to the majority, however, I would affirm the district court’s denial of summary judgment on the other claims as well. I therefore respectfully dissent from the decision to grant Sergeant Moore qualified immunity on any of the claims raised by Provience.
I. Probable Cause
The crux of my disagreement with the majority is its conclusion that “Sergeant Moore had probable cause to seek a warrant for Provience’s arrest.” Maj. Op. at 667. A lack of probable cause is an essential element of both the false-arrest and the malicious-prosecution claims. The majority has therefore relied on its probable-cause determination to hold that Provience’s claims on these issues must fail. That determination is, in my opinion, erroneous under this court’s relevant precedents.
“Probable cause justifying an arrest ‘means facts and circumstances within the *669 officer’s knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.’ ” Estate of Dietrich v. Burrows, 167 F.3d 1007, 1010-11 (6th Cir.1999) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). “Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.” Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). This determination rests on “the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence.” Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir.2000) (emphasis in the original). The totality of the circumstances that existed when Provience was arrested must be construed in the light most favorable to Provience as the party opposing summary judgment below. See, e.g., Bouggess v. Mattingly, 482 F.3d 886, 888 (6th Cir.2007).
Of all the sources of information known to Sergeant Moore in June 2000, the majority cites only one that purportedly supports the decision to arrest Provience—a statement from Larry Wiley, a drug addict with a prior criminal record who had just been arrested for several burglaries and who claimed to have witnessed Rene Hunter’s murder several months earlier. The majority correctly notes that “[o]ur precedent establishes that an investigating officer has probable cause to make an arrest based on an eyewitness account, ‘unless, at the time of arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.’ ” Maj. Op. at 667 (quoting Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir.1999)). But its application of this rule from Ahlers is erroneous in two important respects.
First, I question whether Ahlers should apply to the present case at all. The Ahlers decision cites earlier unpublished decisions of our court for the rule that eyewitness identifications are generally sufficient to support probable cause. See United States v. Amerson, No. 93-6360, 38 F.3d 1217, 1994 WL 589626, at *2-3 (6th Cir. Oct. 21, 1994) (unpublished table decision); Rainer v. Lis, No. 92-2436, 16 F.3d 1221, 1994 WL 33969, at *2 (6th Cir. Feb. 7, 1994) (unpublished table decision). These cases in turn adopted the rule from Gerald M. v. Conneely, 858 F.2d 378, 381 (7th Cir.1988). In both Ahlers and in the cited cases on which it rests, the eyewitness identifications that the courts held were sufficient to establish probable cause came from either the victims themselves or from someone else unquestionably present when the crime was committed. See Ahlers, 188 F.3d at 370 (identification by the victim of a sexual assault); Amerson, 38 F.3d 1217, 1994 WL 589626, at *1 (identification by a bank teller who was present during a robbery); Rainer, 16 F.3d 1221, 1994 WL 33969, at *3 (identification by the victim of a robbery); Gerald M., 858 F.2d at 380-81 (identification by a minor who was punched in the face and had his bicycle stolen). Wiley, in contrast, was neither the crime victim nor was he otherwise known by Sergeant Moore to have been at the scene of the crime. The only basis that Sergeant Moore had for believing that Wiley had actually witnessed Hunter’s murder was Wiley’s own assertion to that effect.
This distinction is important because the reason that eyewitness identifications have been determined to independently support probable cause is that they “are based on firsthand observations” and therefore “are *670 generally entitled to a presumption of reliability and veracity.” Ahlers, 188 F.3d at 370. Independent corroboration that a putative eyewitness was indeed at the scene of the crime therefore weighs in favor of crediting his or her identification of the perpetrator because it gives the investigating officer more reason to believe that the identification is “based on firsthand observation ].” See id. But today the majority, without explanation, applies a rule of presumptive credibility to a putative eyewitness who lacks independent corroboration of actually having witnessed the crime at all.
Second, even if Ahlers does apply here, the majority errs in its application of that precedent because it pays only lip service to the principle that an eyewitness’s identification cannot support probable cause if there is an apparent reason at the time of arrest for the police officer to believe that the witness is lying or mistaken. Maj. Op. at 667. The majority particularly fails to explain how all of the facts known to Sergeant Moore at the time he sought a warrant for Provience’s arrest would not have given him reason to disbelieve Wiley’s statement. Indeed, if Sergeant Moore is deemed not to have had an apparent reason to disbelieve Wiley based on the facts in this record, then I believe that the actual standard being applied is that an uncorroborated eyewitness identification supplies probable cause unless the officer has proof beyond a reasonable doubt that the witness is lying or mistaken. Such a standard, of course, has no basis in the precedent of this court or the Supreme Court.
Certainly an eyewitness identification need not “be consistent with all other available evidence” nor “comport with every detail of other witnesses’ statements” in order to provide probable cause for an arrest. Maj. Op. at 667. But when nearly all the other available evidence not only conflicts with the purported identification, but also points consistently to a suspect other than the person identified by the putative eyewitness, then such evidence easily provides an apparent reason to believe that the putative eyewitness is either lying or mistaken.
The majority notes three major discrepancies between Wiley’s statement and the statements taken from multiple eyewitnesses at the scene of the crime shortly after the shooting: (1) discrepancies regarding the color and make of the car from which the assailant shot Hunter, (2) discrepancies regarding the number of shots fired, and (3) discrepancies regarding the direction in which the car was driven after the shooting. Maj. Op. at 663. A reasonable officer might not pay much heed to conflicts in any one of these details, especially if the officer (unlike in the present case) had an independent reason to believe that the person making the identification actually witnessed the crime. But Sergeant Moore had reason to disbelieve Wiley even beyond the cumulative discrepancies in these material details between Wiley’s version of events and the version consistently described by the witnesses who were indisputably at the scene. By the time that Wiley offered his version, the police had statements from witnesses who knew Hunter, who saw him being taken away in a white Cadillac after having a confrontation with one of Sorrell Mosley’s nephews, and who saw Terry Mosley follow the Cadillac in a gray Chevrolet Caprice soon before Hunter was shot. Moreover, investigating officers had communicated this information to Sergeant Moore both orally and through written “progress notes.”
In contrast, the investigating officers in Ahlers and in Skousen v. Brighton High School, 305 F.3d 520 (6th Cir.2002), had *671 little, if any, reason to disbelieve the individual eyewitnesses in those cases, both of whom were the complainants. See Maj. Op. at 667. And, contrary to the majority opinion’s characterization, neither case stands for the proposition that “an admittedly vague and inconsistent account can provide ample probable cause.” See id. (internal citations and quotation marks omitted). I will address each of these cases in turn.
Ahlers involved a male corrections officer who had been accused by a female inmate in the county jail of forcing the inmate to perform oral sex on him in exchange for food. 188 F.3d at 367. The inmate reported this accusation to another corrections officer and was interviewed three times on the same day regarding her allegations. Id. “[Ejach time her story remained consistent.” Id. Her account given during the interviews was also consistent with what she had told her cellmate about the incident. Id. at 368. The inmate’s account was also consistent with jail booking documents that “did not account for Ahlers’s whereabouts between 12:30 a.m. and 1:00 a.m., leaving a window of time within which the act could have occurred.” Id. at 367. Furthermore, when the investigating police officer had the complainant place a telephone call to Ah-lers, the officer “found it odd that Ahlers was not terribly upset when [she] contacted him at home.” Id. at 368.
A prosecutor determined that these circumstances provided probable cause to arrest Ahlers and charge him with two counts of criminal sexual conduct. Id. Not until the days leading up to Ahlers’s rescheduled preliminary hearing did the complainant’s “recollection of the incident [become] vague and inconsistent with her prior story.” Id. This posi-arrest recollection was not considered relevant to the question of whether there was probable cause to arrest Ahlers and clearly was not the eyewitness statement that the Ahlers court concluded had “provided Defendants with ample probable cause.” Id. at 371. Indeed, the court specified that it was “[t]he facts as initially discovered” that provided the “ample probable cause,” id. (emphasis added), not the “vague and inconsistent” post-arrest recollection, as the majority suggests.
Unlike in the present case, the plaintiff in Ahlers did not even attempt to show that the defendants had an apparent reason to think that the complainant’s “eyewitness identification was in some way untruthful or unreliable.” See id. Ahlers instead “wish[ed] to hold [the defendants] liable for evidence which they failed to collect and, therefore, of which they were unaware.” Id. at 372. Here, Provience does not argue that Sergeant Moore would have uncovered an apparent reason to disbelieve Wiley’s statement had he undertaken further investigation. Rather, Provience contends that Sergeant Moore already had information in hand to cast such serious doubt on Wiley’s statement that the statement could not provide probable cause for the arrest.
This court’s decision in Skousen is equally unhelpful to the majority’s position. In that case, the investigating officer “obtained the eyewitness testimony of the victim, Rebecca, which was verified by the testimony of her father, another eyewitness.” Skousen, 305 F.3d at 528. A statement from Rebecca’s older sister also supported Rebecca’s complaint of abuse at the hands of her mother because it “lent credence to the suggestion that this incident was not the first combative encounter Skousen had with her children.” Id. Rebecca’s complaint was further corroborated by a medical report documenting an injury in the location where Rebecca claimed she had been hit. Id. And just as in Ahlers, *672 the plaintiff in Skousen “presented neither any evidence nor any facts in her Complaint suggesting that [the investigating officer] had reason to believe that either [Rebecca or her father] was untruthful.” Id. These facts are clearly distinguishable from the record in the present case.
In sum, neither Ahlers nor Skousen supports the outcome reached by the majority. Instead, this court’s decision in Gardenhire v. Schubert, 205 F.3d 803 (6th Cir.2000), is far more on point. The relevant issue in that case was whether a police officer had probable cause to arrest two storeowners for stealing goods from a neighboring store. Gardenhire, 205 F.3d at 315. Despite an investigating officer’s belief that the plaintiffs “had been set up,” id., based on the “oddly conspicuous” location where the allegedly stolen objects were found, the plaintiffs were told that they would be “booked on charges of theft, burglary and criminal trespass,” and were presented to a magistrate judge, id. at 309. The magistrate judge also thought that the plaintiffs had been set up, id. at 315, and determined that probable cause was lacking for their arrest, id. at 309. Although this court noted that “there was substantial inculpatory evidence against the Gardenhires,” id. at 316, such as the discovery of reported stolen items in the Gardenhires’ store, it nonetheless held that their false-arrest claim should go to the jury, id. at 318.
Similar to the circumstances in Garde-nhire, the police officers investigating Hunter’s murder believed, based on statements from multiple witnesses that corroborated one another, that one of Sorrell Mosley’s nephews was the shooter and likewise thought that Wiley was lying when he identified Provienee as the shooter. And whereas the officer in Gardenhire had independent inculpatory evidence apart from the complainant’s statement that the goods had been stolen, the sole information on which Sergeant Moore could rely in arresting Provienee was Wiley’s statement. This is presumably why the only information that Sergeant Moore included in his request for an arrest warrant was that Wiley had identified Provience as the shooter, omitting all of the other information that the police had gathered in three months of investigating Hunter’s murder. I therefore conclude that a jury could find from the facts in the record that Sergeant Moore arrested Pro-vience without probable cause.
II. Qualified Immunity
Furthermore, Sergeant Moore is not entitled to qualified immunity because Provience’s right to be free from arrest in the absence of probable cause was “clearly established” in a “particularized ... sense” at the time of his arrest. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). “The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). To guide the inquiry, this court may look to decisions of the Supreme Court, its own decisions, and the decisions of other courts within the Sixth Circuit and its sister circuits. Siggers-El v. Barlow, 412 F.3d 693, 703 (6th Cir.2005).
Couching the qualified-immunity analysis in terms of whether an officer acted intentionally, knowingly, recklessly, or negligently, see Maj. Op. at 667 (citing Ahlers, 188 F.3d at 373-74), only muddles what Saucier instructed should be the court’s focus; ie., “whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted,” 533 U.S. at 202, 121 S.Ct. 2151. Whether that inquiry is better characterized as a recklessness standard than a negligence standard is beside the point. *673 The key issue is whether Sergeant Moore’s conduct “fell below an objective standard of reasonableness” with respect to a clearly established right, see Ahlers, 188 F.3d at 373, not whether his conduct “demonstrated knowing or intentional behavior designed to violate [Provience’s] constitutional rights,” Maj. Op. at 667 (quoting Ahlers, 188 F.3d at 373-74); see also Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (setting “the limits of qualified immunity essentially in objective terms”).
At the time of Provience’s arrest, this court had established that an eyewitness’s identification may constitute probable cause for an arrest unless there is an apparent reason for the officer to disbelieve the eyewitness. See Ahlers, 188 F.3d at 370. The law was likewise well established that an officer seeking an arrest warrant may not ignore exculpatory evidence reasonably available to the officer when assessing probable cause. Estate of Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir.1999) (“The law has been clearly established since at least the Supreme Court’s decision in Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that probable cause determinations involve an examination of all facts and circumstances within an officer’s knowledge at the time of an arrest.” (emphasis omitted)). That the exact circumstances of the present case have not been held actionable does not preclude a finding that the right violated was clearly established. See Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508,153 L.Ed.2d 666 (2002) (explaining that “officials can still be on notice that their conduct violates established law even in novel factual circumstances”).
As discussed above, a jury could easily find that the facts available to Sergeant Moore at the time that he sought the warrant to arrest Provienee provided ample and apparent reason to question the veracity of Wiley’s statement. The fact that none of the officers investigating Hunter’s murder (possibly including Sergeant Moore himself) thought that Wiley’s statement was accurate further supports the conclusion that a reasonable officer in Sergeant Moore’s position would have recognized the apparent reasons to doubt the statement’s veracity. Sergeant Moore’s decision to pursue an arrest warrant under these circumstances therefore raises a triable jury issue that should preclude granting Sergeant Moore qualified immunity on the claims in question.
The majority’s determination — as a matter of law — that Sergeant Moore had probable cause to arrest Provienee is the basis for its decision to reverse the district court’s judgment with respect to both the false-arrest and malicious-prosecution claims. Maj. Op. at 667-68. Because I do not join in this determination, I would affirm the district court’s denial of Sergeant Moore’s motion for summary judgment on all grounds.