*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0331P (6th Cir.)
File Name:  02a0331p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DEBORAH AUDRA SKOUSEN,
       *Plaintiff-Appellee,*

     *v.*

BRIGHTON HIGH SCHOOL,
et al.,
         *Defendants,*

PAUL RAMBO, a Michigan
State Trooper,
      *Defendant-Appellant.*

No. 00-2170

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-75845—Paul D. Borman, District Judge.

Argued:  March 18, 2002

Decided and Filed:  September 26, 2002

Before:  BATCHELDER and CLAY, Circuit Judges;
CARR, District Judge.[*]

_____

[*]The Honorable James G. Carr, United States District Judge for the
Northern District of Ohio, sitting by designation.

prosecution and unreasonable search and seizure, the evidence in the record resoundingly supports the legitimacy of Trooper's Rambo's conduct. Accordingly, we hold that Rambo is entitled to summary judgment on Counts 2 and 3 of the complaint.

### CONCLUSION

For the foregoing reasons, we REVERSE the district court's denial of summary judgment and REMAND with instructions to the district court to enter judgment in favor of Paul Rambo on Counts 2 and 3 on qualified immunity grounds.

---

### COUNSEL

**ARGUED:**   Mark S. Meadows, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Lawrence Nathaniel Radden, RADDEN & ASSOCIATES, Detroit, Michigan, for Appellee. **ON BRIEF:** Mark S. Meadows, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant.   Lawrence Nathaniel Radden, RADDEN & ASSOCIATES, Detroit, Michigan, for Appellee.

---

### OPINION

---

ALICE M. BATCHELDER, Circuit Judge.  Paul Rambo, the only remaining defendant in this action, appeals the district court's denial of his motion for summary judgment on qualified immunity grounds on the plaintiff's claims of illegal search and seizure in violation of the Fourth Amendment and malicious prosecution brought pursuant to 42 U.S.C. § 1983. The district court denied the motion solely because discovery was not yet complete.  We now conclude that the district court erred in denying the motion, both because the defense of qualified immunity is a threshold question, which, if properly raised prior to discovery, the district court has a duty to address prior to discovery, and because on the undisputed facts of this case defendant Rambo is clearly entitled to qualified immunity. We therefore reverse the judgment of the district court and remand this matter with instructions to enter judgment for Rambo on the § 1983 claims.

### PROCEDURAL HISTORY

On December 7, 1999, the plaintiff, Deborah Audra Skousen, filed this action against Michigan State Trooper Paul Rambo and Brighton High School student counselor Kenneth J. Jaukkuri, as well as Brighton High School, the

(6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001).

Finally, Skousen has not offered any evidence that Trooper Rambo actually arrested or "seized" her or even effectuated her arrest. In fact, it is not clear whether she was arrested at all. Under Michigan law, "[a]n arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." *People v. Woods*, 168 N.W.2d 617, 618 (Mich. App. 1969). The federal standard under the Fourth Amendment for an arrest or seizure involves determining whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Saari*, 272 F.3d 804, 808 (6th Cir. 2001) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

There is no evidence that Rambo had anything to do with the prosecution of Skousen after he submitted his report to the prosecutor's office. Skousen voluntarily appeared for her arraignment and was ordered thereafter—but not by Rambo—to proceed to the state police post for fingerprinting and processing. She has not presented any evidence that Rambo indicated an intention to take her into custody or that she, or a reasonable person in her situation, ever believed that she was not free to leave. The critical fact in this calculus is that she voluntarily appeared. However, even if the order requiring her to be fingerprinted and processed at the state police post indicates that she was arrested, Skousen has failed to present any evidence that Trooper Rambo either arrested her or effectuated her arrest. His only role in this process was to fingerprint her.

After viewing the facts in the light most favorable to Skousen, we must conclude that she has failed to state a claim for the violation of a constitutional right at all. Not only has she provided no factual basis for her claims of malicious

Brighton Area School System and Board of Education, and the Brighton Area Schools Superintendent. Jaukkuri was sued in both his official and individual capacities; Rambo was sued only in his individual capacity. Skousen's complaint alleged that the defendants had falsely and maliciously caused her to be arrested, without probable cause, for the assault of her eighteen-year-old daughter, and by their actions had violated her Fourth and Fourteenth Amendment rights to substantive due process and equal protection. Material to this appeal are Skousen's claims in Counts 2 and 3 of the Complaint (reading the Complaint generously, we point out) that Trooper Rambo was responsible for obtaining the warrant for Skousen's arrest on charges that she had assaulted her daughter; that without any evidence that such an assault had occurred, Rambo provided false statements and omitted material facts is his report of investigation of the alleged assault; that Rambo deliberately lied and misrepresented the medical report of the physician who examined Skousen's daughter; and that Rambo knowingly caused Skousen to be arrested and prosecuted without probable cause; and that Skousen was tried before and acquitted by a jury on the assault charges.

On February 22, 2000, Rambo moved for summary judgment on Counts 2 and 3, claiming qualified immunity. In support of his motion, Rambo provided the district court with his own affidavit, the police report that he had filed detailing his investigation of the alleged assault, the misdemeanor complaint issued by the prosecutor's office; and the medical report of Dr. Irene Kimovec (who had examined Skousen's daughter after the alleged assault). The court ordered the plaintiff to respond to the summary judgment motion by March 17, 2000, and set the matter for hearing on June 7, 2000. The hearing was rescheduled for June 14. Skousen's response to the motion for summary judgment—which was not filed until June 14, the new hearing date— included copies of the same documents provided by Rambo as well as the testimony given by Dr. Kimovec and Trooper Rambo during Skousen's trial. The district court—apparently *sua sponte*—struck Skousen's response because it was untimely,

but did not rule on the motion for summary judgment. Rather, although the plaintiff had filed no affidavit—and indeed has to this day never filed an affidavit—under Rule 56(f) of the Federal Rules of Civil Procedure explaining her inability to present the facts necessary to oppose Rambo's summary judgment motion, the district court characterized the motion as "premature" because discovery was not complete; ordered the motion held in abeyance until the conclusion of discovery on August 28, 2000; further ordered that Rambo would be permitted to supplement or amend his motion by September 1, 2000; and required Skousen to respond to the motion by September 21, 2000.

On August 25, 2000, after Rambo had been deposed by Skousen and had filed answers to plaintiff's interrogatories and requests for admission, the parties stipulated to an extension of the discovery deadline until November 3, 2000. The stipulation did not purport to affect the September deadlines set by the court for Rambo's amendment or supplementation of the motion for summary judgment or Skousen's response to the motion. On August 31, the district court issued an order setting November 3, 2000, as the new discovery cutoff, and denying without prejudice Rambo's motion for summary judgment,[1] specifically ordering that Rambo would be permitted to refile the motion after the conclusion of discovery. This timely appeal followed.

## FACTUAL BACKGROUND

These facts are unrefuted in the record. On Monday morning, April 28, 1997, Brighton High School senior Rebecca Skousen, confided to defendant Kenneth Jaukkuri, a guidance counselor at Brighton High School, that the previous evening, her mother, plaintiff Deborah Skousen, had struck Rebecca twice in the face with an open hand, causing her to have pain on the left side of her jaw and difficulty

---

[1]With some reluctance, we observe that at this point, the motion for summary judgment had been pending for just over six months. 28 U.S.C. § 476(a)(1).

bruise, that disputed fact is not material to Skousen's claim, especially in light of the eyewitness testimony indicating that Rebecca was struck at least twice and the medical evidence demonstrating that Rebecca was indeed injured, even if the injury was not outwardly obvious.

Further, Skousen points to no evidence to support her conclusory allegations that Trooper Rambo was untruthful in his testimony at her trial. To the contrary, the transcript of his trial testimony—included as part of Skousen's untimely response to the summary judgment motion— reconfirmed the information in his police report and the medical report. Significantly, the exhibits attached to Skousen's untimely opposition make it absolutely clear that there is no evidence to support any of her claims. Finally, in her brief on appeal, although Skousen reiterates her claims that Rambo provided false testimony and lied about the doctor's report, she not only points to no evidence to support these claims, she escalates the rhetoric by stating—again without any factual basis—that Rambo's motivation for these actions was that "Rambo hated Plaintiff Deborah Skousen, whom he disliked," ostensibly because Rambo's son had once dated one of Skousen's daughters. While Rambo does not dispute the fact that his son once dated a Skousen daughter, that fact alone is far from sufficient to provide even a scintilla of evidence that Rambo had any such motivation or provided any false information or testimony.

Skousen has offered no evidence, either by way of facts set out in her Complaint or exhibits to her untimely opposition to the motion, supporting her claim that Trooper Rambo caused her to be prosecuted. It is undisputed that once Rambo completed his report and Rebecca had been examined, he forwarded both his police report and the medical report to the prosecutor's office. There is no evidence that he made or even was consulted with regard to the decision to prosecute Skousen. Rambo cannot be held liable for malicious prosecution when he did not make the decision to prosecute Skousen. *Coogan v. City of Wixom*, 820 F.2d 170, 172-73

false statements about the alleged assault and the harm caused to Rebecca. Those allegations, if they were supported, might state a claim for the violation of clearly established constitutional rights. But they are wholly unsupported.

The evidence presented by Skousen clearly demonstrates that she was not arrested or prosecuted without probable cause. "Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (internal quotation marks omitted). An eyewitness identification constitutes probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (internal quotation marks omitted). Eyewitnesses have firsthand knowledge and are presumed to be reliable and truthful. *Id*.

Trooper Rambo obtained the eyewitness testimony of the victim, Rebecca, which was verified by the testimony of her father, another eyewitness. He also received a statement from Skousen's older daughter who lent credence to the suggestion that this incident was not the first combative encounter Skousen had with her children. Skousen has presented neither any evidence nor any facts in her Complaint suggesting that Trooper Rambo had reason to believe that either of these witnesses was untruthful. Moreover, these statements were supported by Dr. Kimovec's medical report, which revealed that Rebecca came to Dr. Kimovec complaining that she had been struck in the face by her mother and was experiencing pain in her left jaw and having difficulty opening her mouth. The report also stated that there was a "tender preauricular area and just above angle of jaw on left" and a "contusion jaw." While it is true that the medical report is unclear regarding whether Rebecca suffered a facial

opening her mouth. Jaukkuri reported the incident to the Michigan State Police at 8:00 A.M. Later in the day, he took Rebecca to an urgent care center where she was examined by Dr. Kimovec, whose handwritten report of the examination stated that Rebecca had a "tender preauricular area [located in front of the ear] and just above the angle of the jaw" on the left side. Immediately following this notation in the report, there appears a small handwritten circle, not quite closed at the top, inside of which is a slightly curved horizontal line (appearing to the layman's eye to resemble nothing so much as a "smiley face"); this symbol is immediately followed by the word "bruise." The report also contains a section captioned "Impression" which says—as best we can decipher it—"contusion jaw"; finally, the report instructs Rebecca to see her own doctor if she is "no better in 3-4 days," and to use ice and Motrin.

Defendant Rambo of the Michigan State Police undertook to investigate, following which he filed a police report detailing the investigation. The report indicates that Jaukkuri advised the police at 8:00 A.M. on Monday, April 28, 1997, that he had a student in his office who had been assaulted by her mother and that the assault went beyond parental discipline. Rambo interviewed Rebecca, Rebecca's father, guidance counselor Jaukkuri, and Rebecca's older sister (who no longer lived in the parents' home). Rebecca told Rambo that she had argued with her mother, Deborah Skousen; that her mother slapped her in the face, knocking her backwards; that her mother threw a clock radio onto the floor, breaking it; that Rebecca's father attempted to intervene in the altercation but was hit by Deborah and fell to the floor; that Rebecca took her ten-year-old sister upstairs into Rebecca's room and barricaded the door, and then called the police; that the police refused to send an officer to the home because they would not interfere with "parental discipline"; and that Rebecca told her father that she intended to talk with her school guidance counselor about the incident.

The police report indicates that Jaukkuri told Rambo that he had had dealings with Deborah Skousen in the past in which

she had become angry and irrational, which caused him to be very concerned about Rebecca's circumstances. Jaukkuri said that he intended to get medical treatment for Rebecca's swollen jaw. The report further indicates that at 3:03 P.M. on Monday, April 28, 1997, Rebecca was treated by Dr. Irene Kimovec for a bruised jaw.

When Rambo telephoned the Skousen residence, Deborah Skousen advised him to come to the home if he wanted to talk with her, and not to speak with her husband because he was the cause of the problem. But when Rambo arrived at the home, Deborah Skousen had left and gone to the high school. Deborah's husband—Rebecca's father—was home, however, and he told Rambo that Rebecca and Deborah had engaged in an argument the night before during which Deborah had struck Rebecca three times with an open hand, and when he had attempted to intervene, Deborah had struck him as well. Mr. Skousen explained to Rambo that the family needed counseling, but that Deborah refused to seek it. Mr. Skousen expressed his hope that his wife would not find out that he had talked with Rambo.

When Rambo again spoke with Deborah over the phone, she advised him that the entire matter was a plot by her husband and that there was nothing to investigate. Rambo explained that he needed to talk with her in person and would come directly to the home; when he arrived, Deborah had again departed. Later that day, Deborah sent a letter to the police department opining that Rambo could not be objective in investigating the matter because he had a son who had dated Skousen's older daughter; the letter included short notes from her husband and son stating that there was nothing wrong with Skousen's mental health. According to the report, Mr. Skousen later told Rambo that he had been forced by his wife to write that part of the letter.

Finally, the report includes Rambo's interview with Rebecca's older sister, Rachel, who no longer lived at home. According to the sister, a number of Deborah Skousen's relatives had histories of mental problems, and Deborah was

## D.  The Merits of the Qualified Immunity Claim

The district court did not order that Rambo's qualified immunity defense must be denied because there remained for trial genuine issues of material fact. We therefore have jurisdiction to review that order in this interlocutory appeal.

The wrinkle in our analysis is that Rule 56 requires that once a motion for summary judgment is made and is supported as required in Rule 56(c), as Rambo's motion was, the adverse party cannot rest solely on the allegations made in her pleadings. Rather, she must set forth by affidavits or otherwise specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Arnett v. Myers*, 281 F.3d 552, 559 (6th Cir. 2002). Skousen has presented no evidence whatsoever which we might review in order to determine whether, accepting the facts as she claims they are, she has stated a claim for violation of a constitutional right at all or for violation of a constitutional right that was clearly established at the time of the incident of which she complains. But because we cannot be certain that her failure to do so is not—at least in part—because of the district court's orders, we think it would be inappropriate to dispose of the motion for summary judgment simply by holding that Skousen failed to present evidence sufficient to permit a jury to find in her favor. *Anderson v. Liberty Lobby*, 477 U.S. at 252. Neither, however, would it be appropriate to treat the allegations in her complaint as being true, since Rambo's properly supported motion provides hard evidence that the allegations in the complaint material to Skousen's claim against him are demonstrably false. We will therefore look to the untimely response that Skousen filed, recognizing that the district court struck it *sua sponte*, but recognizing as well that Rambo has argued on appeal that he was entitled to judgment because Skousen's response, had it not been stricken, contained nothing to raise a genuine issue of fact material to her claims.

Skousen maintains that Trooper Rambo is not entitled to qualified immunity because he unlawfully arrested her and caused her to face trial without probable cause by making

version of events, regardless of the sufficiency of the supporting evidence, does not state a claim"). Finally, it is clear that before addressing the substance of a claim of qualified immunity, the court must first determine whether the plaintiff has stated a claim of a constitutional violation at all. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999) (holding that the court evaluating a claim of qualified immunity must first determine whether the plaintiff states a claim of a constitutional violation at all, and then must determine whether the claimed right was clearly established, before proceeding to the qualified immunity question).

The district court's failure to rule on the merits of Rambo's summary judgment motion was legal error. Rather than dismiss the motion because discovery was not complete, the district court was required to determine—prior to permitting further discovery—whether Skousen's complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation. At that point, the court should have turned to the question of whether any facts material to Skousen's claims were genuinely at issue, an inquiry that required the court to review the motion and its supporting documents as well as the plaintiff's opposition and its supporting documents. Only then, and only on a finding that material facts were in dispute, was the court at liberty to hold the motion in abeyance pending discovery. Here, of course, the plaintiff failed to file any opposition to the motion until three months after she was required to do so by the scheduling order; neither did she file an affidavit, as required by Federal Rule of Civil Procedure 56(f), explaining her failure or inability to file her affidavits in opposition. While after her untimely response was stricken in June 2000, the plaintiff may have been lulled by the district court's orders into believing that she had no duty to respond further, under the particular circumstances of this case—as we shall explain—that disadvantage is not sufficient to save her from a judgment for Rambo.

a violent person who had taken her anger out on Rachel until she moved out, and that Rebecca had taken Rachel's place as the object of that anger.

Rambo submitted his report, along with the medical report from Dr. Kimovec, to the prosecutor's office. That office charged Skousen with aggravated domestic violence. Skousen voluntarily came to her arraignment, after which she was ordered to go to the state police post for fingerprinting and processing. While it is not clear from the record whether Skousen was ever formally arrested, it is undisputed that after he turned in his investigative report Rambo did nothing more than fingerprint Skousen at the police station and testify at her trial.

## ANALYSIS

### A. Jurisdiction

As a threshold matter, we must determine whether we have jurisdiction to hear this appeal. Because qualified immunity is immunity from suit, and not merely from liability, denials of summary judgment on the basis of qualified immunity are categorized as collateral orders which are immediately appealable under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949), to the extent they present issues of law separable from the merits yet potentially determinative of a claim, *Mitchell v. Forsyth*, 472 U.S. 511, 526-28 (1985); *Mattox v. City of Forest Park*, 183 F.3d 515, 518-19 (6th Cir. 1999). If the denial of summary judgment turns on the existence of a genuine issue of material fact, an interlocutory appeal is improper, and we are without jurisdiction to hear the appeal. *Dickerson v. McClellan*, 101 F.3d 1151, 1156 (6th Cir. 1996) (citing *Johnson v. Jones*, 515 U.S. 304, 316-17 (1995)). We do, however, retain jurisdiction over the legal question of qualified immunity, which requires a determination of whether a given set of facts violates a clearly established right. *Mattox*, 183 F.3d at 519.

In this action, the district court issued two orders regarding Trooper Rambo's motion for summary judgment on the basis

of qualified immunity:  the first order held the motion in abeyance until the completion of discovery; the second denied the motion without prejudice and stated that Trooper Rambo could refile the motion after the conclusion of discovery. Neither of the two orders is premised on the district court's finding that there were genuine issues of material fact remaining for trial.  Indeed, the existence of genuine issues of fact material to the plaintiff's claims is not mentioned in these orders at all.  Because the denial did not turn on the existence of a genuine issue of material fact, we have jurisdiction to entertain this appeal.

**B.  Standard of Review**

We review de novo a district court's denial of a motion for summary judgment premised on qualified immunity. *Mattox*, 183 F.3d at 519.  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  We must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**C.  The District Court's Treatment of the Motion for Summary Judgment on Qualified Immunity Grounds.**

The entitlement to qualified immunity involves immunity from suit rather than a mere defense to liability. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Until this threshold immunity question is resolved, discovery should not be allowed." *Id*.

The philosophy behind the doctrine of qualified immunity "is a desire to avoid the substantial costs imposed on government, and society, by subjecting officials to the risks of trial." *Vaughn v. United States Small Bus. Admin.*, 65 F.3d 1322, 1326 (6th Cir. 1995) (internal quotation marks omitted) (citing *Harlow*, 457 U.S. at 816).  Such burdens include "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id*.  Moreover, "[t]o avoid imposing needless discovery costs upon government officials, the determination of qualified immunity must be made at an early stage in the litigation." *Id*.  And although there is no question that *Johnson v. Jones* curtailed to some extent the reach of *Mitchell v. Forsyth*, there is also no question that *Mitchell*'s principle that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery," *Mitchell*, 472 U.S. at 526, still stands at the threshold of the qualified immunity analysis. *See, e.g.*, *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997) ("The question whether the uncontested facts demonstrated a constitutional violation is a pure question of law—and one from which an immediate appeal can be taken where qualified immunity has been denied."); *Sanderfer v. Nichols*, 62 F.3d 151, 153 n.2 (6th Cir. 1995) ("the plaintiff's