*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0076p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LYNDAL KIMBLE and MELANISE KIMBLE,
          *Plaintiffs-Appellees,*

          *v.*

GREG HOSO; FRANK TEMPESTA; MICHAEL STABILE;
JOHN MANDOPOULOS; and THE CITY OF WARREN,
          *Defendants-Appellants.*

No. 04-3837

>

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 03-02379—Peter C. Economus, District Judge.

Argued and Submitted: February 2, 2006

Decided and Filed: February 28, 2006

Before: MERRITT, MARTIN, and GILMAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Hilary S. Taylor, WESTON HURD, Cleveland, Ohio, for Appellants. **ON BRIEF:** Hilary S. Taylor, WESTON HURD, Cleveland, Ohio, for Appellants. Richard A. Olivito, Boardman, Ohio, for Appellees.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. Lyndal and Melanise Kimble filed suit against the defendants under 28 U.S.C. § 1983, asserting that Lyndal Kimble was the victim of excessive force by the police. The defendants allege that the district court erred by failing to promptly award summary judgment in their favor on the grounds of qualified immunity. For the reasons set forth below, we dismiss the defendants's interlocutory appeal for lack of jurisdiction.

I.

According to the Kimbles's complaint, on the evening of June 28, 2003, Warren police officers Greg Hoso and Frank Tempesta observed Lyndal Kimble driving on Colonial Road toward Niles Road. The officers followed Kimble in their vehicle because they allege that he failed to use a turn signal when making a right turn onto Niles Road and again when turning onto Kennilworth Road. Kimble parked his vehicle in the front yard of his residence on Kennilworth. Officer Hoso

1

approached Kimble's vehicle as Kimble sat in the car with the driver's door ajar. The officers requested Kimble's license and insurance information. Kimble reached into the glove compartment to obtain his insurance card. As he turned to hand the insurance card to the officers, Officer Hoso allegedly reached into the car and grabbed Kimble by throat and squeezed on Kimble's airway, restricting his breathing. Kimble struggled to free himself from Officer Hoso's grip. As he did so, Officer Tempesta came up to the side of Kimble's car. The officers then pulled Kimble out of the car and Officer Tempesta restrained Kimble while Officer Hoso punched Kimble three times in his face and head. Officer Tempesta then threw Kimble to the ground, at which point one of the officers sat on Kimble's back. Finally, Officer Tempesta lifted Kimble back to his feet and Kimble pleaded with the officer to stop the assault. Officer Hoso then retrieved a small plastic bag from Kimble's vehicle.

Another officer, Officer Stabile, was then called to the scene. The three officers then took Kimble and slammed him against the police cruiser and onto the ground repeatedly while they punched, kicked and kneed Kimble in the body and face. The police officers also maced Kimble at least seven separate times, including spraying Kimble in the mouth, nose and eyes after Kimble was already on the ground. While Kimble was on the ground, one of the officers jammed his baton into Kimble's back while other officers slapped and kneed him repeatedly until the officers were physically exhausted. The beating was witnessed by several individuals and videotaped by a bystander. The videotaped encounter received national media attention, in part because the officers were Caucasian and Kimble is African-American. The officers eventually took Kimble to the police station and he was later transported to a local hospital where he was provided with limited medical care.

Contrary to the Kimbles's complaint, Officers Hoso and Tempesta allege that when they approached Kimble's vehicle they observed him put a large white object in a plastic baggie into his mouth. Office Hoso alleges he ordered Kimble to spit out the baggie but he refused. Kimble then attempted to get out of the passenger side of the car, which Hoso attempted to prevent him from doing. The officers assert that Kimble resisted their effort to get him out of the driver's side of the vehicle and continued to fight them even after they had gotten him out of the vehicle. As a result the officers requested backup and Officer Stabile arrived on the scene. During the altercation, the officers claim they observed Kimble spit the baggie out of his mouth and throw it on the ground. Kimble then tried to grab Hoso around the neck and Hoso struck Kimble in the shoulder and fist. Kimble continued to struggle with the officers and Officer Hoso retrieved the baggie from the ground and placed it on the hood of the police cruiser. After doing so Hoso attempted to break Kimble's resistance by striking Kimble twice in the shoulder with his knee. Officers Tempesta and Hoso then sprayed Kimble with mace in an attempt to subdue him. Officer Stabile also struck Kimble with his baton in the shoulder. Finally after several minutes the officers were able to handcuff Kimble.

On November 20, 2003, Lyndal Kimble and his wife Melanise Kimble filed suit under 42 U.S.C. § 1983 against Officers Hoso, Tempesta, and Stabile along with Warren Police Chief Mandopoulos and the City of Warren alleging, inter alia, excessive use of force against Kimble. On January 8, 2004, a case management conference was held at which the district court ordered that discovery be stayed until the question of qualified immunity was dealt with, and that the defendants should file a motion for summary judgment on qualified immunity grounds by February 9, 2004. The district court also ordered the Kimbles to file their motion in opposition to summary judgment by

March 9. The district court's order stated that no extensions would be granted. The defendants filed their summary judgment motion on February 10.[1]

Plaintiffs's counsel failed to file a brief in opposition to summary judgment by the March 9th deadline. As a result, the district court issued an order to show cause why the unopposed motion for summary judgment should not be granted and held a hearing on the motion on April 15th. At the hearing, the Kimbles's attorney Richard Olivito appeared scattered and unprepared. Olivito alleged that he had failed to file a brief in opposition to summary judgment based on problems in his personal life over the proceeding several months. Olivito asserted that he had spent a day in jail, was involved in a custody battle and had a major chronic illness that had recently prevented him from devoting himself to his caseload.

The district judge, concerned that the Kimbles's arguably meritorious claim might be unfairly dismissed based on their lawyer's malfeasance, ordered Olivito to obtain the assistance of co-counsel to aid him in preparing the Kimbles's case by April 30th. The district court's order stated that if Olivito failed to obtain co-counsel then he would be removed from the case. On May 3, Clair Carlin filed a notice of appearance indicating that he had been retained to represent the Kimbles as Olivito's co-counsel. The district court recognized Carlin's appearance as co-counsel and ordered that the Kimbles's counsels respond to the defendants's motion for summary judgment by June 3. On June 8, Carlin filed a motion for an extension to respond to the defendants's summary judgment motion until June 30, on the grounds that he had not yet had an opportunity to review, organize, and evaluate the Kimbles's case with Olivito. The district court granted Carlin's motion but noted that this was the last extension that plaintiffs's counsels would receive. On June 8th, defense counsel submitted a notice of interlocutory appeal claiming that the district court erred in failing to rule on the defendants's summary judgment motion.

## II.

Before we address the merits of the defendants's appeal, we must first determine whether we have jurisdiction over the defendants's claims. As a general rule, the federal appellate courts have no jurisdiction under 28 U.S.C. § 1291 to review interlocutory decisions such as a denial of summary judgment. Nevertheless, the collateral-order doctrine excepts a narrow range of interlocutory decisions from the general rule. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). Under the collateral order doctrine for an interlocutory decision to be appealable as a final order it must satisfy two criteria: (1) "[I]t must conclusively determine the disputed question," and (2) that question must involve a claim "of right separable from, and collateral to, rights asserted in the action." *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985) (internal citations omitted); *see also Wallin v. Norman*, 317 F.3d 558 (6th Cir. 2003).

There is no doubt that a decision on qualified immunity involves a claim of right that is separate from, and collateral to, rights asserted in a section 1983 action so long as the appeal does not challenge the facts of the case but rather only raises a question of law. *Mitchell*, 472 U.S. at 527. The question we must answer therefore is whether the district court's delay in ruling on the defendants's motion for summary judgment qualifies as a conclusive determination of the issue of qualified immunity or some other collateral order in this case. We conclude that it does not and thus we lack jurisdiction over the defendants's appeal.

The district court in this case did not make any decision on the merits or otherwise as to the defendants's motion for summary judgment. Rather, the district court merely delayed ruling on the

---

[1]The defendants filed a motion for order to exceed page limit for motion for summary judgment with their summary judgment motion attached on February 9, 2004, which was granted and their motion for summary judgment was filed on February 10.

defendants's motion in order to permit the Kimbles to respond to the summary judgment motion. While reasonable minds can differ as to whether the district judge was providing the Kimbles's counsel with unnecessary extensions, it seems to us to be reasonable that the district judge was attempting to ensure that the Kimbles's case was not erroneously dismissed solely on the grounds of their attorneys's ineptitude. Thus, nothing in the circumstances of this case suggests that the district court's decision to delay in ruling on the defendants's summary judgment motion in order to ensure that the plaintiffs filed a brief in opposition constitutes a conclusive ruling on the qualified immunity issue.

The defendants point to this Court's decision in *Skousen v. Brighton High School*, 305 F.3d 520 (6th Cir. 2002), as grounds for concluding that this Court has jurisdiction over the defendants's interlocutory appeal. The defendants's brief suggests that *Skousen* is a nearly identical case to the one now before this Court and thus should control our legal analysis. We read *Skousen* as being sufficiently distinct so as not to control here. In *Skousen*, the defendant filed a motion for summary judgment on the grounds of qualified immunity. The district court denied the defendant's motion without prejudice on the grounds that it was untimely because discovery was not yet completed. We ruled that the district court's failure to rule on the merits of the defendant's motion was legal error. Our basis for this holding was the Supreme Court's decision in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), that stated that "until [the] threshold immunity question is resolved, discovery should not be allowed." Thus, in *Skousen* we reasoned that the district court was required to address the merits of the defendant's summary judgment motion "prior to permitting further discovery." *Skousen*, 305 F.3d at 527. Not permitting the defendant to appeal the district court's denial of their motion on timeliness grounds would defeat the purpose of the qualified immunity, the *Skousen* court reasoned. Qualified immunity is immunity from suit, not merely a defense against liability. Thus, the purpose of qualified immunity would be defeated if a defendant was required to face further stages of litigation, such as discovery, before the qualified immunity question was addressed. Thus, the *Skousen* court decided that where the district court's denial of a summary judgment motion defeats the essential purpose of qualified immunity, the court of appeals has jurisdiction to review an interlocutory appeal.

The procedural history of this case differs from that in *Skousen* in two critical ways. First, while in *Skousen*, there was an order denying the defendant's summary judgment motion (albeit without prejudice and not on the merits), here there has been no ruling whatsoever on the defendants's motion on the merits or otherwise. Thus, unlike in *Skousen*, there is no order which even arguably allows this Court to conclude that, as required by the collateral order doctrine, the issue of qualified immunity has been conclusively determined. Moreover, this case differs from *Skousen* in that the district court did not delay ruling on the defendants's motion for the legally erroneous reason of permitting further discovery. On the contrary, the district court's earlier order made it abundantly clear that the district court was cognizant of Supreme Court's ruling in *Harlow*, as the district court stayed further discovery until the issue of qualified immunity was addressed. Instead, the district court merely delayed ruling on the defendants's motion based on concerns that the Kimbles's failure to oppose the motion was based on the negligence of counsel rather than their lack of a colorable claim. This type of delay, which does not require the defendants to face any additional stages of litigation, does not undercut the essential purpose of qualified immunity. Based on these critical differences, we conclude that *Skousen* does not support the defendants's argument that we have jurisdiction over the defendants's interlocutory appeal.

Moreover, none of the other cases the defendants cite lend sufficient credence to their jurisdiction argument. The other Sixth Circuit cases referenced by the defendants are nearly identical to *Skousen* and thus go no farther in advancing the defendants's claims. *See Wallin v. Norman*, 317 F.3d 558 (6th Cir. 2003) (review permitted where the district court denied without prejudice the defendant's motion for summary judgment on qualified immunity grounds to permit discovery to occur); *Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004) (same). In addition, all of the

other court of appeals cases cited by the defendants are also distinguishable. In each case, the district court's disposition of the defendant's motion regarding qualified immunity raised the concern that the case would proceed to trial without the issue of qualified immunity being disposed of. *See In Re Montgomery County*, 215 F.3d 367 (3d Cir. 2000) (jurisdiction exists over interlocutory appeal where the district court's order implicitly denied the defendant's immunity claims, thus depriving the defendants of their right to avoid trial); *Workman v. Jordan*, 985 F.2d 332 (10th Cir. 1992) (jurisdiction over interlocutory appeal where district court inexplicably postponed disposition of the qualified immunity issue until trial); *Helton v. Clements*, 787 F.2d 1016 (5th Cir. 1986) (jurisdiction over appeal where the district court issued an order stating that any further motions would be decided as part of the trial of the case on the merits); *Craft v. Wipf*, 810 F.2d 170 (8th Cir. 1987) (permitting appeal of motion implicitly denying the defendant's qualified immunity claim); *Musso v. Hourigan*, 836 F.2d 736 (2d 1988) (court has jurisdiction over qualified immunity appeal where district court denied defendant's summary judgment motion without expressly addressing the defendant's qualified immunity defense). These cases are unlike the instant case because here the district court stayed further proceedings until the qualified immunity claim was dealt with. Thus, there is no concern that the purpose of qualified immunity will be undercut. We therefore conclude that the cases cited by the defendants do not support their jurisdiction argument and that this court should conclude that it lacks jurisdiction to consider the defendants's appeal.

Given the lack of precedent supporting the defendants's jurisdiction claim, we conclude that the collateral order doctrine does not encompass the defendants's interlocutory appeal. With good reason, district courts ordinarily enjoy broad discretion in matters of pretrial management, scheduling, and docket control. *See, e.g.*, *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 362-63 (6th Cir.1999); *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir.1996). Here, the district court exercised that discretion to grant the Kimbles an additional three and half months to reply to the defendants's motion for summary judgment. While the defendants were clearly unhappy with the extensions the district court granted, the time delay does not appear egregiously long given the circumstances of the case. Thus, we decline to conclude that the district court's delay in ruling on the defendants's summary judgment motion amounted to a denial of that motion. As such, we conclude that there was no appealable order in this case to which the collateral order doctrine could apply. We therefore lack jurisdiction over the defendants's interlocutory appeal.

III.

For the reasons discussed above, we dismiss the defendants's appeal for lack of jurisdiction.