RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0170p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
────────────────

IN RE: FLINT WATER CASES.

────────────────────────────────────────────

LUKE WAID, Parent and Next-Friend of SR, a minor;
et al.,

*Plaintiffs*,

No. 20-1352

ELNORA CARTHAN, et al.,

*Plaintiffs-Appellees*,

*v.*

DARNELL EARLEY, et al.,

*Defendants*,

RICHARD DALE SNYDER, former Governor of
Michigan; ANDY DILLON, former Treasurer of
Michigan,

*Defendants-Appellants*,

VEOLIA NORTH AMERICA, INC., VEOLIA NORTH
AMERICA, LLC, VEOLIA NORTH AMERICA OPERATING
SERVICES, LLC,

*Intervenors-Appellees*.

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
Nos. 5:16-cv-10444; 5:16-cv-11247—Judith E. Levy, District Judge.

Decided and Filed:  June 2, 2020

Before:  MERRITT, MOORE, and MURPHY, Circuit Judges.

_____

**COUNSEL**

**ON MOTIONS:** Richard S. Kuhl, Margaret Bettenhausen, Nathan A. Gambill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants. **ON RESPONSE:** Emmy L. Levens, COHEN MILSTEIN SELLERS & TOLL PLLC, Washington, D.C., Paul Novak, Gregory Stamatopoulos, WEITZ & LUXENBERG, P.C., Detroit, Michigan, for Plaintiffs-Appellees. James M. Campbell, CAMPBELL CONROY & O'NEIL, P.C., Boston, Massachusetts, for Veolia Appellees.

_____

**OPINION**

_____

KAREN NELSON MOORE. Former State of Michigan Governor Richard Dale Snyder and former State Treasurer Andy Dillon claim that they cannot be deposed as non-party fact witnesses with respect to claims against other defendants in the litigation stemming from the Flint Water Crisis. In their view, they are immune from all discovery until they have exhausted every opportunity for appeal from the district court's denial of their motions to dismiss based on qualified immunity. Meanwhile, other defendants and certain plaintiffs are pursuing discovery on wholly separate claims and have noticed Snyder and Dillon for non-party fact witness depositions. Snyder and Dillon moved for a protective order in the district court to stop the depositions from going forward. When their request was denied, they appealed the district court's discovery order to this court and shortly thereafter requested a stay of the depositions until we resolve their appeal from the denial of a protective order. We **DENY** Snyder's and Dillon's request for a stay of non-party depositions pending resolution of their appeal from the district court's order denying their request for a protective order, and we **DISMISS** for lack of jurisdiction their appeal from the denial of a protective order.

# I.  BACKGROUND

This appeal derives from the consolidated putative class action in the *In re Flint Water Cases* litigation.[1]  It is one of dozens of ongoing actions brought by individuals, businesses, and putative classes in state and federal court challenging the actions of state and private actors in creating, sustaining, and covering up the Flint Water Crisis.  Defendants include government officials from the State of Michigan, the City of Flint, and state agencies.  R. 620-3 (Fourth Am. Compl. at 1–2, ¶ 2) (Page ID #17804–05).  Defendants also include private engineering companies like Veolia that are facing claims of professional negligence for failing to explain the need to treat the water properly for corrosion and for lying to the public about the existence and extent of the crisis.  *Id.* at 1–3, ¶ 2 (Page ID #17804–06).  While government officials like Snyder and Dillon have been litigating the issue of qualified immunity, discovery against private parties like Veolia has proceeded.

On April 1, 2019, the district court ruled on the defendants' motions to dismiss.  R. 798 (Op. & Order) (Page ID #21103).  The district court granted the government officials' motions to dismiss plaintiffs' claims alleging 42 U.S.C. § 1983 equal-protection violations, § 1985(3) conspiracy, Michigan's Elliott Larsen Civil Rights Act ("ELCRA"), § 1983 state-created danger, and gross negligence.  *Id.* at 128 (Page ID #21230).  The district court denied, however, defendants' motions to dismiss plaintiffs' § 1983 bodily-integrity claim on the bases of qualified and absolute immunity.  *Id.* at 127 (Page ID #21229).  Thus, the only surviving claim against the state defendants, including Snyder and Dillon, is plaintiffs' bodily-integrity claim.

After deciding defendants' motions to dismiss based on qualified immunity, the district court entered a comprehensive case management order ("CMO") on April 30, 2019, to direct the course of discovery.  R. 827 (Case Management Order 4/30/19) (Page ID #22804).  The order distinguished between discovery as to parties and non-parties.  *See id.*  Then, on May 20, 2019, the district court ruled on the state defendants' motion for a stay of discovery pending final resolution of their motions to dismiss based on qualified immunity.  R. 861 (Discovery Order 5/20/19) (Page ID #23407).

---

[1]The facts alleged in the derivative case are set out in our opinion in *In re Flint Water Cases (Waid v. Snyder)*, – F.3d –, 2020 WL 2611546, at *2–12 (6th Cir. 2020).

As context, the district court noted in its May 20, 2019 discovery order that other defendants with no claim to immunity had begun discovery pursuant to the CMO. *Id.* at 1, 7–8 (Page ID #23407, 23413–14). The state defendants, however, sought a stay of "*all* discovery across the Flint Water Cases until their claims of immunity have been decided by this Court, the Sixth Circuit, and the United States Supreme Court, if necessary." *Id.* at 1–2 (Page ID #23407–08) (emphasis added). The district court granted in part and denied in part the state defendants' request. *Id.* at 2 (Page ID #23408).

The district court recognized that the state defendants must be treated as though they are immune from the claims brought against them until they have exhausted their opportunities to appeal the district court's denial of their motions to dismiss based on immunity. *Id.* at 6–7 (Page ID #23412–13). Accordingly, the district court issued a stay with respect to "discovery on claims for which they continue to litigate the issue of immunity." *Id.* at 2 (Page ID #23408). Thus, the court ruled, "the state and MDEQ defendants will not be subjected to discovery with respect to the sole allegation against them, which is that they violated plaintiffs' right to bodily integrity, until they have exhausted their opportunities to pursue their qualified immunity claim on appeal." *Id.* at 6–7 (Page ID #23412–13).

The state defendants' request for a stay of discovery was partly denied in the sense that the state defendants would "be treated as non-parties pending the outcome of their qualified immunity appeals." *Id.* at 5 (Page ID #23411). That meant that they could be subject to discovery requests only as non-party fact witnesses regarding wholly separate claims against other defendants. The district court explained that, "[i]f the state and MDEQ defendants are eventually dismissed as a result of their pending appeals, they will still be required to respond to discovery as a non-party." *Id.* at 8 (Page ID #23414). Discovery from the state defendants as non-party fact witnesses therefore was "inevitable." *Id.*

Eventually, Snyder, Dillon, and other state defendants received deposition notices from the Veolia defendants and certain plaintiffs. The state defendants promptly moved for a protective order in the district court to stay non-party fact witness depositions until after they exhausted their appeals from the denial of their motions to dismiss on the issue of qualified immunity. *See* R. 1047 (Mot. for Protective Order) (Page ID #26634). The district court denied

their request for a protective order and reiterated that they are required to comply with discovery requests as non-parties.  R. 1100 (Protective Order Ruling 4/9/20 at 2) (Page ID #27458).

Presently, certain plaintiffs seek to depose former Governor Snyder starting on June 25, 2020, and the Veolia defendants seek to depose former Treasurer Dillon starting on July 7, 2020. When the district court denied their request for a protective order, Snyder and Dillon appealed the denial of a protective order to this court.  They informed the district court of their appeal and obtained a statement from the district court that an additional request for a stay of the non-party depositions would be futile.  R. 1130 (Conference 5/8/20 at 10–11) (Page ID #27846–47).  They then requested a stay from us to stop the depositions from going forward while we decide their appeal from the district court's denial of their request for a protective order against taking the non-party depositions.

We note at the outset that we recently affirmed the district court's denial of qualified immunity as to Snyder, and we remanded for the district court to consider whether to dismiss Dillon in light of the district court's decision in *Brown v. Snyder (In re Flint Water Cases)*, No. 18-cv-10726, 2020 WL 1503256, at *9 (E.D. Mich. Mar. 27, 2020).  *In re Flint Water Cases (Waid v. Snyder)*, – F.3d –, 2020 WL 2611546, at *2 (6th Cir. May 22, 2020).  We recognize, as the district court did, that our resolution of the qualified immunity issue does not exhaust Snyder's and Dillon's opportunities for review by the Supreme Court on the qualified immunity issue and, thus, does not render these proceedings moot.

## II.  REQUEST FOR A STAY

We have authority over Snyder's and Dillon's request for a stay of the district court's discovery ruling because they have shown that filing an initial motion for a stay in the district court would be futile.  *See* FED. R. APP. P. 8(a).  We balance four interrelated factors when considering whether to grant a stay:  "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."  *Michigan State A. Philip Randolph Inst. v. Johnson*,

833 F.3d 656, 661 (6th Cir. 2016) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

First, Snyder and Dillon are not likely to succeed on appeal from the district court's order denying their request for a protective order. They claim that they cannot be deposed on *any* matter pending resolution of their qualified-immunity appeal. That is incorrect.

Snyder and Dillon stress that qualified immunity protects them from discovery until their claim of entitlement to immunity has been conclusively denied on their motions to dismiss. The Supreme Court requires that civil-rights actions brought under § 1983 play out in stages to shield government officials from the "burdens of litigation." *Kennedy v. City of Cleveland*, 797 F.2d 297, 299–300 (6th Cir. 1986) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985)). If the defendant files a motion to dismiss based on qualified immunity, the court must "stay discovery until that issue is decided." *Id.* at 299. If the defendant is denied qualified immunity on the motion to dismiss, then "the plaintiff ordinarily will be entitled to some discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

Yet, qualified immunity protects government officials from "unnecessary and burdensome discovery or trial proceedings" only. *Id.* at 597–98; *see also Mitchell*, 472 U.S. at 526 (explaining that qualified immunity relieves defendants of "the burdens of *broad-reaching* discovery" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982)) (emphasis added))). The "right to immunity is a right to immunity *from certain claims*, not from litigation in general . . . ." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996) (emphasis added). "Granting qualified immunity on only one of the claims may reduce discovery but it does not eliminate it." *McLaurin v. Morton*, 48 F.3d 944, 949 (6th Cir. 1995); *see also Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007) ("To the extent that [the defendant] is subject to discovery requests on claims for which she does not or cannot assert qualified immunity, such discovery requests do not implicate her right to qualified immunity.").

Here, the district court granted the state defendants effective immunity pending the final resolution of their motions to dismiss based on qualified immunity. In other words, the district court recognized that no discovery may be sought from the state defendants on the claims against

them unless and until they are conclusively denied qualified immunity on their motions to dismiss. The district court carefully sculpted a discovery plan that afforded the state defendants their full entitlement to immunity, while permitting other parties to seek discovery from them as fact witnesses on wholly separate claims. The discovery plan would permit state defendants to be deposed as non-party fact witnesses to events regarding separate claims brought against different defendants to prevent the litigation from stalling out for *all* defendants during the pendency of *these state defendants*' appeals of the denial of their motions to dismiss based on qualified immunity. *See* R. 827 (Case Management Order 4/30/19 at 1) (Page ID #22804); R. 861 (Discovery Order 5/20/19 at 5, 8–10) (Page ID #23411, 23414–16). The state defendants obtained a broad stay from discovery that treats them as though they had already proven their immunity and were dismissed from the case. The district court's exception to that stay was limited, and it was necessary for discovery to proceed for other parties in the sprawling litigation. Doing so was well within the district court's discretion.

Discovery rulings, no doubt, are high stakes, but we usually leave decisions on how best to manage discovery to the district court's discretion. *See Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988) ("[I]t is well established that the scope of discovery is within the sound discretion of the trial court." (quotation omitted)). It is up to the district court to take qualified immunity into account when developing its discovery plan. *See Crawford-El*, 523 U.S. at 597–98 ("[T]he trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings."). And, in fact, the district court did so here.

The district court refrained from issuing its discovery plan until after it resolved defendants' motions to dismiss asserting qualified immunity. *See* R. 827 (Case Management Order 4/30/19) (Page ID #22804); R. 861 (Discovery Order 5/20/19 at 5) (Page ID #23411). Then, recognizing that its ruling on qualified immunity was subject to appeal, the district court ordered a stay of discovery regarding the sole remaining claim against the state defendants—plaintiffs' bodily integrity claim. R. 861 (Discovery Order 5/20/19 at 6–7) (Page ID #23412–13). "[T]he state and MDEQ defendants," the district court ruled, "will not be subjected to

discovery with respect to the sole allegation against them, which is that they violated plaintiffs' right to bodily integrity, until they have exhausted their opportunities to pursue their qualified immunity claim on appeal." *Id.*  In the same order, the district court made a limited exception to the stay to permit discovery from state defendants as non-party fact witnesses to events relevant to entirely separate claims brought against different defendants. *Id.* at 7–8 (Page ID #23413–14). The district court explained that "[p]laintiffs have counts pending against other defendants that have filed answers and are ready to defend their positions." *Id.*  "It follows that the Court can order discovery to proceed with respect to these other defendants." *Id.* at 8 (Page ID #23414).

The key Supreme Court cases that Snyder and Dillon cite for us—*Mitchell*, *Crawford-El*, and *Harlow*—feature prominently in the district court's order delineating the state officials' discovery obligations.  The district court recognized that *Mitchell* "established that qualified immunity grants 'immunity from suit rather than a mere defense to liability.'" *Id.* at 6 (Page ID #23412) (quoting *Mitchell*, 472 U.S. at 526).  "[C]ourts must take care," the district court wrote, "to ensure that government officials are not subjected to unnecessary and burdensome discovery until issues of immunity have been resolved at the earliest opportunity." *Id.* (citing *Crawford-El*, 523 U.S. at 597).  Accordingly, the district court struck a balance between the discovery needs of other defendants and the state defendants' immunity interest:  "If the state and MDEQ defendants are eventually dismissed as a result of their pending appeals, they will still be required to respond to discovery as a non-party.  So in the interim, this litigation will go forward and the state and MDEQ defendants are required to respond to discovery requests as if they were already dismissed from the case." *Id.* at 8 (Page ID #23414).[2]

---

[2]The district court's decision to permit discovery from government officials as non-party fact witnesses to events related to claims against other defendants is not out of the ordinary. *See, e.g.*, *Mendia v. Garcia*, No. 10-cv-03910-MEJ, 2016 WL 3249485, at \*5 (N.D. Cal. June 14, 2016) ("While discovery directed to Defendants as to the *Bivens* claims against them is inappropriate given their pending qualified immunity appeal, . . . limited discovery as to these Defendants is appropriate because regardless of whether they are entitled to qualified immunity, they will still need [to] participate in discovery as percipient witnesses related to the FTCA claims against the United States."); *Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 733 (N.D. Tex. 2014) ("The court can think of no legal reason why discovery and pretrial matters may not proceed with respect to [the counts not being appealed on qualified-immunity grounds]. . . . [E]ven if the Fifth Circuit were to grant [him] qualified immunity . . . he would necessarily be required to testify on behalf of the City regarding [those counts]. . . . Whether [he] is subjected to discovery on these counts now or after the resolution of qualified immunity is quite beside the point.").

We disagree with Snyder and Dillon that the district court's "non-party" versus "party" distinction is meaningless, or that it permits an end-run around their entitlement to immunity. The district court was clear that no party may seek discovery from the state defendants on the particular claim that they continue to litigate with respect to immunity. *See id.* at 2 (Page ID #23408) ("The state and MDEQ defendants are entitled to a stay of discovery on claims for which they continue to litigate the issue of immunity."). If these non-party depositions turn out to be a ruse—as Snyder and Dillon assert that they are—Snyder and Dillon are free to object and move for a protective order at the district court level as issues arise. It is inappropriate for us, however, to issue a prophylactic order to stop these depositions from going forward based on hypothetical horrors before a single problematic question has been asked.

For all these reasons, we conclude that Snyder and Dillon are not likely to succeed on their appeal from the district court's order denying them a protective order.

Second, and for the same reason, Snyder and Dillon will not suffer irreparable harm absent a stay. The district court forbade the noticing parties from using depositions to probe Snyder and Dillon regarding the sole surviving claim against them, which is that they violated plaintiffs' right to bodily integrity. *See id.* at 5, 8–10 (Page ID #23411, 23414–16). Snyder and Dillon will not be effectively denied their "entitlement not to stand trial or face the other burdens of litigation" if we deny their request for a stay of the district court's denial of their protective order pending their appeal from that denial. *Mitchell*, 472 U.S. at 526. Even if Snyder and Dillon ultimately should be granted qualified immunity, the noticing parties would still request these depositions because, in their view, Snyder and Dillon are key factual witnesses regarding other claims. The discovery at issue is not only suitably tailored to the situation, but also inevitable.

We further emphasize that our decision does not leave Snyder and Dillon without a remedy. They may file for a protective order in the district court if they object to the noticing parties' line of questioning. What they cannot do is ask us to resolve a run-of-the-mill discovery dispute on an interlocutory appeal.

For each of these reasons, Snyder and Dillon will not suffer any irreparable harm absent a stay of the district court's discovery order.

Third, the noticing parties will be harmed if we grant a stay. The plaintiffs have alleged ongoing serious health injuries that continue to worsen over time. *See In re Flint Water Cases (Waid v. Snyder)*, – F.3d –, 2020 WL 2611546, at \*10 (6th Cir. 2020). Thus, the progress of the litigation has a real effect on plaintiffs' ability to secure a meaningful remedy. A delay also could interfere with the scheduled start of the bellwether trials, presently set to begin in January 2021. R. 1150 (Order 5/21/20 at 3) (Page ID #28167). A delay similarly would prejudice the Veolia defendants, who are also invested in the efficient resolution of this case.

Finally, the public interest favors the development of the facts and the expeditious resolution of this case. And as described above, Snyder's and Dillon's immunity interest—and the public's accompanying interest in their immunity—is not at stake in this limited non-party fact witness discovery. We conclude that all four factors weigh against granting a stay of the district court's order allowing the non-party depositions to proceed. We accordingly **DENY** Snyder's and Dillon's motion for a stay of non-party depositions pending resolution of their appeal from the district court's order denying their motion for a protective order.

## III. MOTION TO DISMISS

The Veolia Defendants-Appellees have filed a motion to dismiss this appeal No. 20-1352. They assert that we lack jurisdiction under either 28 U.S.C. § 1291 or the collateral order doctrine to review a discovery order. Snyder and Dillon have filed a response, contending that the district court's discovery order is an implicit denial of their qualified immunity. We conclude that we do not have jurisdiction to entertain Snyder's and Dillon's appeal from the district court's order denying their request for a protective order.

Section 1291 vests us with jurisdiction over appeals from "final decisions of the district courts." 28 U.S.C. § 1291. When a party appeals something other than "the last order possible to be made in a case," "a decision of a district court is appealable if it falls within 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require

that appellate consideration be deferred until the whole case is adjudicated." *Mitchell*, 472 U.S. at 524–25 (quotations omitted). This is known as the collateral order doctrine, and it entitles government officials to an immediate appeal from the denial of qualified immunity. *Id.* at 525–27.

Because discovery orders generally are non-final, non-appealable orders, even under the collateral order doctrine, *see Coleman v. Am. Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992), Snyder and Dillon want us to construe the district court's order denying their request for a protective order as an implicit order denying them qualified immunity. We do not think that the collateral order doctrine stretches so far.

"[T]here can be two appeals based upon claims of immunity and which can be taken prior to final judgment: first, after denial of a motion to dismiss on the pleadings and, second, after denial of a motion for summary judgment following discovery." *Sinclair v. Schriber*, 834 F.2d 103, 104 (6th Cir. 1987). Orders regarding discovery do not fit either of these categories and, for that reason, are not independently appealable under the collateral order doctrine. Neither our court nor the Supreme Court has endorsed the extension of the collateral order doctrine that Snyder and Dillon ask for here. We acknowledge that the rationale for permitting government officials to take an immediate appeal from the denial of a motion to dismiss based on qualified immunity rests in part on the concern that forcing officials to wait for a final judgment on the merits would subject them to potentially unwarranted discovery. *See Harlow*, 457 U.S. at 816–18; *Mitchell*, 472 U.S. at 526. But these cases simply do not establish an entitlement to an interlocutory appeal from a discovery order itself.

Snyder and Dillon have not pointed to a single case in which we permitted an immediate appeal from a discovery order like the one at issue here. They have, however, pointed to a couple of cases that they claim are close enough. *See Skousen v. Brighton High Sch.*, 305 F.3d 520, 525–26 (6th Cir. 2002); *Everson v. Leis*, 556 F.3d 484, 490–93 (6th Cir. 2009). In *Skousen* and *Everson*, for example, we held that we had jurisdiction over the district court's decisions to hold in abeyance summary judgment motions based on qualified immunity pending completion of discovery. *Skousen*, 305 F.3d at 525–26; *Everson*, 556 F.3d at 490–93. There was a question as to whether we had jurisdiction over the orders holding the summary judgment motions in

abeyance because we may entertain an appeal from the denial of summary judgment only if it presents issues solely of law. *Skousen*, 305 F.3d at 525 (citing *Mitchell*, 472 U.S. at 526–28). We decided that we had jurisdiction to entertain the appeals because, even though the district courts denied summary judgment so that the parties could conduct more discovery, the decisions did not turn on the existence of a genuine issue of material fact. *Id.* at 526; *Everson*, 556 F.3d at 493. We explained that it did not matter that the order denying summary judgment was styled as an order holding disposition of the motion for summary judgment in abeyance. "If a district court can thwart interlocutory appeal by refusing to address qualified immunity through abeyance rather than dismissal, then the district court can effectively ignore this court's directive that district courts address qualified immunity promptly." *Everson*, 556 F.3d at 492. Snyder and Dillon assert that the district court's discovery order at issue here similarly is tantamount to a denial of qualified immunity. We disagree.

The critical difference between *Skousen*/*Everson* and this case is that *Skousen* and *Everson* concerned a district court's delay in ruling on a motion for summary judgment on the issue of qualified immunity. The district courts temporarily denied the defendants' summary judgment motions to permit additional discovery—but we authorized the appeal because that decision operated, for our purposes, as a denial of summary judgment on the question of qualified immunity. Thus, the orders at issue in *Skousen* and *Everson* fall into *Sinclair*'s second bucket for the types of rulings that are eligible for immediate interlocutory appeal. The orders in those cases were not discovery orders. The collateral order doctrine is already an exception to the general finality rule. Snyder and Dillon are not entitled to appeal any number of discovery matters that they believe have some impact on their immunity interest. We can only imagine the deluge of appeals that would descend upon us if standard discovery orders could so easily be rebranded as final judgments.

Finally, we underscore that the district court's discovery order fully takes into account the need for a pause in discovery regarding the claim on which Snyder and Dillon assert qualified immunity, and it orders limited discovery as non-party fact witnesses regarding other claims in the litigation. The district court took the state defendants' immunity seriously. If the noticing parties fail to comply with the district court's order by pressing an inappropriate line of

questioning, Snyder and Dillon may assert their objections in the district court. But ordering Snyder and Dillon to comply with discovery requests as non-party fact witnesses to events regarding wholly separate claims against different defendants does not, in the abstract, interfere with their immunity.

We reject Snyder's and Dillon's attempt to dress up the district court's discovery order as an implicit denial of qualified immunity. We accordingly **DISMISS** for lack of jurisdiction their appeal No. 20-1352.