NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0196n.06

**No. 09-1787**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

**Mar 30, 2011**

LEONARD GREEN, Clerk

DIANE MARIE MEIRTHEW,                     )
                                          )
    Plaintiff-Appellee,                   )     ON APPEAL FROM THE
                                          )     UNITED STATES DISTRICT
    v.                                    )     COURT FOR THE EASTERN
                                          )     DISTRICT OF MICHIGAN
ROBERT AMORE, City of Wayne Police Officer, )
                                          )
    Defendant-Appellant,                  )
                                          )
and                                       )
                                          )
CITY OF WAYNE,                            )
                                          )
    Defendant.                            )
                                          )

BEFORE:  SUTTON and GRIFFIN, Circuit Judges; and BERTELSMAN, District Judge.[*]

    GRIFFIN, Circuit Judge.

    Plaintiff Diane Marie Meirthew brought this 42 U.S.C. § 1983 action against defendant police officer Robert Amore, asserting a single claim of excessive force. Amore's motion for summary judgment based upon qualified immunity was denied by the district court. He now timely appeals, and we affirm.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

In the early morning of May 19, 2007, Officer Amore was on duty in the vicinity of Meirthew's neighborhood. Looking through the windows of Meirthew's home, Amore observed several minors consuming alcohol. Amore thereafter obtained a search warrant, which he executed later that morning.

After the police officers entered Meirthew's home pursuant to the warrant, several minors were tested and found to have recently consumed alcohol. Meirthew herself was highly intoxicated, having consumed six to ten beers. After being instructed to sit down, Meirthew began walking away from the officers. The officials responded by taking her to the floor and handcuffing her. Thereafter, while being escorted to a police vehicle, Meirthew allegedly kicked a reserve officer in the groin.

Meirthew was arrested for furnishing alcohol to minors, felony assault, resisting arrest, and disorderly conduct. Meirthew's daughter, Ronnie Meirthew, and family friend, Aaron Roche, were also arrested for being minors in possession of alcohol and disorderly conduct. Upon arrival at the police station, Meirthew, her daughter, and Roche were taken to the booking room. What occurred there is the basis of Meirthew's excessive-force claim. The incident was audio and video recorded, with a camera taking pictures in two-second intervals. These recordings were synchronized, but the resulting video is poor in quality.

While in the booking room, Meirthew appeared intoxicated and belligerent. As a result, the booking officials concluded that she should be placed in a cell and booked at a later time. However, to be placed in a cell, police policy required that Meirthew be searched by a female officer. To facilitate the search, Amore led Meirthew to a wall and instructed her to spread her feet. At the wall,

Amore stood in close proximity to Meirthew, holding her by her handcuffs or wrists. At this time, two other officers, in addition to Amore, were present in the small booking room.

The video recording demonstrates some level of resistance by Meirthew when she was placed against the booking room wall. However, the level and form of resistance is disputed and cannot be deciphered clearly from the video. Amore contends that Meirthew was kicking, swinging elbows, and attempting to strike him. Officer Bernard Corney testified that Meirthew kicked Amore and otherwise refused to cooperate. Meirthew family friend Aaron Roche stated that Meirthew refused to spread her feet, continually moving them together after Amore would kick them apart. However, Roche also testified that Meirthew was not violent and did not attempt to kick Amore.[1]

Amore did not request assistance from his fellow officers when struggling with Meirthew. Instead, he utilized a pain-compliance technique by lifting Meirthew's arms, which were handcuffed, such that her elbows were above her head. Amore warned Meirthew that if she did not comply with his directives, he would take her to the ground. When she refused to comply, Amore utilized an "arm-bar takedown" to thrust Meirthew to the floor face first. Meirthew fell, unbraced and uncontrolled, to the floor, hitting her face with the full force of her body. After she began bleeding profusely from her face, the officers called an ambulance for her treatment.

As a result of the booking-room takedown, Meirthew suffered six facial fractures, head lacerations, and a nosebleed. Meirthew now allegedly experiences numbness on the right side of her face and in her front teeth. In addition, Meirthew allegedly suffers from carpal tunnel syndrome in

---

[1]Meirthew has no independent memory of the events that occurred in the booking room.

her wrists, and has pain in her elbows, arms, shoulders, and neck. Meirthew attributes all these injuries to the incident.

Meirthew was charged with felony assault on a police officer, assault and battery, and six counts of furnishing alcohol to minors. Pursuant to a plea bargain that dismissed the assault charges, Meirthew pleaded no contest to three counts of furnishing alcohol to a minor and disturbing the peace.

In the present 42 U.S.C. § 1983 action claiming excessive force, the district court denied Amore's motion for summary judgment, holding that genuine issues of material fact preclude Amore's entitlement to qualified immunity. Amore now appeals.

II.

We review de novo a district court's grant of summary judgment. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).[2] When determining whether the movant has met this burden, we view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

---

[2]Meirthew contends that several of Amore's exhibits are inadmissible because they "are not affidavits, depositions, or party admissions" as required by Federal Rule of Civil Procedure 56(e)(1). However, Amore is not limited to affidavits, depositions, and party admissions in moving for summary judgment, but may offer any relevant and admissible evidence. Fed. R. Civ. P. 56(c)(2). Meirthew also contends that Exhibit 24-11 is irrelevant and therefore inadmissible. Because we need not consider this exhibit, this objection will not be addressed.

"Through the use of qualified immunity, the law shields governmental officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) (internal quotation marks and citation omitted). A two-tiered inquiry is required to determine whether an officer is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds). We determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" *Id.* If the plaintiff establishes that a constitutional violation occurred, we consider "whether the right was clearly established" at the time of the violation. *Id.* Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). When the defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Livermore*, 476 F.3d at 403.

III.

"The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers." *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). This prohibition extends to the use of force during booking procedures. *Lawler v. City of Taylor*, 268 F. App'x 384, 386 (6th Cir. 2008) (unpublished) (citing *Phelps v. Coy*, 286 F.3d 295, 300-01 (6th Cir. 2002)).

In *Graham v. Connor*, the Supreme Court held that excessive-force claims are analyzed under a "reasonableness" standard. 490 U.S. 386, 395 (1989). Assessing whether a particular use of force is reasonable "requires a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at stake."
*Id.* at 396 (internal quotation marks and citation omitted). Accordingly, a court must consider "the totality of the circumstances," "including the severity of the crime at issue, whether the subject pose[d] an immediate threat to the safety of the officers or others, and whether [the subject was] actively resisting or attempting to evade arrest by flight." *Id.* (internal quotation marks and citation omitted). This analysis "contains a built-in measure of deference to the officer's on-the-spot judgment[.]" *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Upon review, we conclude that Meirthew has set forth sufficient admissible evidence to establish a genuine issue of material fact regarding the reasonableness of Amore's use of force. Viewing the record in the light most favorable to Meirthew, Amore utilized the arm-bar takedown when plaintiff was unarmed, handcuffed, surrounded by police officers, physically restrained, and located in the secure confines of a police station. While she was non-compliant in refusing to spread her feet, a reasonable jury could find that Meirthew posed no danger and the use of the arm-bar takedown was unreasonable under the circumstances.

Here, all the *Graham v. Connor* factors favor a finding of excessive force. First, the underlying crimes allegedly committed by Meirthew were not severe. While Meirthew was charged with kicking an officer in the groin, the charge was dismissed pursuant to a plea bargain in which she pleaded no contest to three counts of furnishing alcohol to a minor and disturbing the peace. *See Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (noting that disturbing the peace is "relatively minor"); *Harris v. City of Circleville*, 583 F.3d 356, 366 (6th Cir. 2009) (finding several non-violent crimes to be "not particularly serious").

Second, Meirthew did not pose an immediate threat at the police station. Indeed, she was unarmed, handcuffed, and surrounded by police officers. *See Harris*, 583 F.3d at 366 (noting that a plaintiff "did not pose an immediate threat" in part because she was handcuffed and surrounded by officers). Moreover, Meirthew made no verbal or physical threats, is five feet, four inches in height, and 123 pounds in weight. Amore, on the other hand, is five feet, ten inches in height, and 230 pounds in weight. *See Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (holding that plaintiff did not pose an immediate threat when she possessed no weapon, made no verbal threats, and was shorter and lighter than the officers); *Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985) (abrogated on other grounds) (finding that plaintiff did not pose a threat in part because he was 120 pounds and restrained by a man weighing 175 pounds). Moreover, the situation confronting Amore in the booking room was not a "tense, uncertain, and rapidly evolving" situation requiring him to make "split-second judgments." *Graham*, 490 U.S. at 397; *see also St. John v. Hickey*, 411 F.3d 762, 772 (6th Cir. 2005) (abrogated on other grounds) (finding the use of force to be excessive in part because "exigent circumstances" did not require "speedy" action by officers).[3]

Finally, Meirthew was not attempting to resist or evade arrest by flight. Indeed, she was already arrested, handcuffed, and present in the City of Wayne police station. While Meirthew refused to spread her feet to be searched, such resistance was minimal. *See Rohrbough v. Hall*, 586

---

[3]Amore contends that Meirthew posed an immediate threat of harm because she was combative, intoxicated, and had previously assaulted an officer. However, viewing the evidence in the light most favorable to plaintiff, her intoxicated and belligerent state does not necessarily justify the use of force in this case. *See Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010) (noting that the plaintiff's drunk and belligerent state was insufficient to justify the use of force).

F.3d 582, 586 (8th Cir. 2009) (noting that *"de minimis* or inconsequential" resistance does not justify a substantial use of force); *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (noting that "passive" resistance did not justify use of significant force). Moreover, while Meirthew's non-compliance may have justified *some* physical response by Amore, the *amount* of force utilized may have been unreasonable. *See Lawler*, 268 F. App'x at 387 (quoting *Graham*, 490 U.S. at 395) ("[T]he Fourth Amendment governs more than just '*when*' force may be applied; it also governs '*how* [that force] is carried out.'"); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("[E]ven where some force is justified, the amount actually used may be excessive."). Here, in response to Meirthew's refusal to spread her feet, Amore utilized a takedown maneuver that forcefully thrust her to the booking room floor. This maneuver was performed, despite the fact that plaintiff was handcuffed, leaving her with no means with which to protect her face. These facts, taken in the light most favorable to Meirthew, are sufficient to establish a violation of her Fourth Amendment right to be free from excessive force.[4]

IV.

Next, Amore contends that even if a constitutional violation occurred, he is nevertheless entitled to qualified immunity because the violation was not clearly established at the time the incident occurred. Indeed, "it is not enough that a plaintiff establishes that the defendant's use of force was excessive under the Fourth Amendment. To defeat qualified immunity, the plaintiff must show that the defendant had notice that the manner in which the force was used had been previously

---

[4]Indeed, at oral argument, Amore conceded that the arm-bar takedown is not normally used on handcuffed subjects.

proscribed[.]" *Livermore*, 476 F.3d at 403-04. Accordingly, government officials are entitled to qualified immunity, despite the existence of a constitutional violation, if such violation was not "clearly established" at the time of the incident. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). A constitutional violation is clearly established when "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

The constitutional violation at issue here was clearly established at the time the incident occurred. As described above, each of the *Graham* factors support a finding of excessive force. *See Rohrbough*, 586 F.3d at 587 (finding a constitutional violation to be clearly established when each of the *Graham* factors supported a finding of excessive force). Moreover, our prior opinions clearly establish that it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented. *See Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) (holding that it is clearly established that when a suspect refuses to follow officer orders, but otherwise poses no safety threat, use of significant force is unreasonable); *Shreve*, 453 F.3d at 687 (finding "passive resistance" to be an insufficient justification to use significant force against a plaintiff who was already pacified through the use of pepper spray); *Smoak*, 460 F.3d at 783-84 (noting that despite plaintiff's action in suddenly jumping to his feet, a reasonable officer would have known that knocking the plaintiff to the ground was excessive in light of the fact that plaintiff was handcuffed). Indeed, in *Harris v. City of Circleville*, we held that "there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." 583 F.3d at 367; *see also Morrison v.*

*Bd. of Trs. of Green Twp.*, 583 F.3d 394, 404 (6th Cir. 2009) (quoting *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 607-08 (6th Cir. 2006)) ("This Court has consistently held . . . that 'use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law.'"). Because it was clearly established that the use of significant force in response to passive resistance may constitute excessive force, and because Meirthew posed no safety threat, Amore is not entitled to summary judgment based upon qualified immunity.

V.

In conclusion, Meirthew has met her burden in establishing genuine issues of material fact regarding Amore's alleged violation of her clearly established rights.[5] Accordingly, the district court's denial of the motion for summary judgment based upon qualified immunity is affirmed.

---

[5]In reviewing the district court's denial of summary judgment, we have noted the existence of critical issues of material fact. At trial, the jury will determine the relevant facts surrounding the booking of Meirthew, including the level and form of resistance presented. We do not opine regarding the viability of Meirthew's excessive-force claim if her version of the facts, as described above, is rejected by the jury.